115 U.S. 1 (1885)
UNION PACIFIC RAILWAY COMPANY
v.
MYERS.
SAME
v.
CITY OF KANSAS.
SAME
v.
KNUTH.
SAME
v.
HARWOOD.
TEXAS & PACIFIC RAILWAY COMPANY
v.
McALLISTER.
TEXAS & PACIFIC RAILWAY COMPANY
v.
KIRK.
SAME
v.
MURPHY.
Supreme Court of United States.
Argued November 20, 21, 1884.
Decided May 4, 1885.
IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF KANSAS.
IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF MISSOURI.
IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF NEBRASKA.
IN ERROR TO THE SUPREME COURT OF THE STATE OF KANSAS.
IN ERROR TO THE SUPREME COURT OF THE STATE OF TEXAS.
*3 Mr. John F. Dillon for Union Pacific Railway Company.
Mr. Walter D. Davidge, Mr. John F. Dillon, Mr. John C. Brown, and Mr. Wager Swayne for Texas & Pacific Railway Company.
Mr. W. Hallett Phillips for all defendants in error.
Mr. A.H. Garland for defendants in error in Texas & Pacific cases.
Mr. T.P. Fenlon filed a brief for Myers, defendant in error.
Mr. W.H. Munger and Mr. E.H. Gray filed a brief for Knuth, defendant in error.
MR. JUSTICE BRADLEY delivered the opinion of the court.
The principal question involved in these cases is whether a suit brought in a State court against a corporation of the United States may be removed by such corporation into the Circuit Court of the United States, on the ground of its being a corporation organized under a law of the United States. The plaintiff in error in four of the cases is the Union Pacific Railway Company, and in the other three cases is the Texas & Pacific Railway Company. They contend that they have such a right of removal, either under the removal act of July 27, 1868, 15 Stat. 227, now forming § 640 of Revised Statutes; or under the act of March 3, 1875, entitled "An Act to determine the jurisdiction of Circuit Courts of the United States, and to regulate the removal of causes from State courts, and for other purposes," 18 Stat. 470; or both. Whether the corporations of the United States, organized under acts of Congress, have or have not this right of removal is the principal question in these cases.
The suits were all brought in State courts against the said corporations severally. In the first case, Myers, a switchman at Armstrong, in Kansas, in the employ of the Union Pacific Railway Company, sued the company for an injury alleged to *4 have been sustained by him through the carelessness of the company or its agents, in the construction of the coupling of its cars. The company filed an answer, and at the same time a petition for the removal of the cause to the Circuit Court of the United States for the District of Kansas, and the proper bond required by the law. The petition for removal stated that the petitioner was a corporation other than a banking corporation, and organized under a law of the United States, namely, an act of Congress entitled "An Act to aid in the construction of a railroad and telegraph line from the Missouri River to the Pacific Ocean, and to secure to the government the use of the same for postal, military, and other purposes," approved July 1st, 1862; and that, in accordance with said act and the acts amendatory and supplemental thereto, the petitioner had exercised and did exercise its corporate functions and powers.
The petition then proceeded as follows:
"That February 1st, 1880, pursuant to sec. 16 of the said act of July 1, 1862, and of the act of July 2d, 1864, the Kansas Pacific Railway Company, a corporation created by the Territorial Legislature of Kansas, and organized under the laws of said Territory, and the Denver Pacific Railway & Telegraph Company, a corporation created and organized under the laws of the Territory of Colorado, both of which said companies are mentioned in said acts of Congress and their said railroads by said acts made a part of the Union Pacific Railroad system, were, by agreement, consolidated with the Union Pacific Railroad Company. Your petitioner and said consolidated company, by agreement, as by said acts authorized, assumed and adopted the name of The Union Pacific Railway Company, which company, consolidated, assumed, took, and from thenceforth had and has, by virtue of said agreement of consolidation, possession and ownership of all the railroads and other property, real and personal, of said constituent companies, and has and does operate and manage the same under and by authority of said acts of Congress, and is governed and controlled by said acts, and is to all intents and purposes and in fact a corporation under the laws of the United States.
*5 "That the plaintiff, Abram Myers, has sued your petitioner, the Union Pacific Railway Company, process in this suit having been served on its agents, and your petitioner has appeared thereto and filed its answer; that the matter and amount in this suit above entitled exceeds, exclusive of costs, the sum or value of five hundred dollars; that your petitioner has a defence to said action arising under and by virtue of the aforesaid laws of the United States; that said suit has not been tried, nor has it been ready or stood for trial, and the present is the first term of the court at which it could have been tried."
The petition concluded with the proffer of the proper bond, and a prayer for an order of removal, and that the court would proceed no further in the cause. The bond was approved and an order of removal was made. On filing the record in the Circuit Court of the United States, a motion was made to remand the cause to the State court, and it was remanded accordingly, the circuit judge holding that the suit was not one arising "under the Constitution and laws of the United States," within the meaning of the act of Congress of March 3, 1875, and that a suit cannot be removed from a State to a federal court upon the sole ground that it is a suit by or against a corporation organized under the laws of the United States. To the judgment remanding the cause, the writ of error was sued out in this court.
The next case, Union Pacific Railway Company v. The City of Kansas, was a proceeding instituted by the common council of said city by ordinance passed in April, 1880, for widening a street through the depot grounds of the company, and thereby taking a portion of its said grounds and the property of many other persons. A jury was summoned in November, 1880, before the mayor, to inquire and find the value of the property taken for the street, and to assess the amount upon surrounding property benefited thereby. On December 12, 1880, this jury found the value of the company's property taken equal to $7,305, and assessed, as benefits, upon the remaining property of the company the sum of $12,325 towards paying the damages for widening the street. The verdict was confirmed by the mayor and common council, February 25, 1881. The laws *6 of Missouri give to any party, dissatisfied with the award of the jury in such cases, an appeal to the Circuit Court of Jackson County (in which Kansas City is situated), and the Union Pacific Railway Company, and some other dissatisfied parties, filed separate appeals, and the proceedings were certified to the said court, where the said appeals were by the law directed to be tried "in all respects, and subject to the same rules and the same law, as other trials had in the Circuit Court, and the same record thereof made and kept." After the case was certified to the Circuit Court of Jackson County, the company in due time, April, 1881, filed a petition for removal of the case to the Circuit Court of the United States for the Western District of Missouri. The petition, as in the case of Myers, set out the incorporation of the company, and the consolidation of the three companies before mentioned under the acts of Congress before referred to, by the name of The Union Pacific Railway Company. The petition then proceeds to state as follows:
"And your petitioner, by agreement of said constituent companies, succeeded to, had, and possessed all the rights and privileges and property, real and personal, which was of said constituent companies, or either of them, and that at the time of commencement of this proceeding your petitioner had owned and possessed, exclusive of all other rights and claims, the tract of land described in said proceeding, as follows:" (it then describes the land of the company taken for the street, and then states as follows:) "and that the same had been acquired by the Kansas Pacific Railway Company for depot and other railway purposes by authority of law, and that your petitioner held said land for said purposes, and was occupying the same in part for such purposes at the time of the commencement of the proceedings, and was about to appropriate the residue thereof to such use, the increase of business of your petitioner making it imperatively necessary that it should be so occupied.
"Your petitioner distinctly avers that it is a corporation, not banking, organized under the laws of the United States; that it holds and possesses said property pursuant to such laws; that it has a defence in this action arising under and by virtue of *7 the laws of the United States hereinbefore referred to; and your petitioner desires that said cause may be removed into said Circuit Court of the United States for trial pursuant to section 640 of the Revised Statutes of the United States. Your petitioner further states that the matter in dispute in this cause, in which your petitioner is interested, exceeds the sum of five hundred dollars, exclusive of costs; and further, that this suit has not been tried, but is now pending for trial on appeal in the Circuit Court of Jackson County, Missouri."
The petition concluded with the ordinary proffer of a bond and prayer for removal of the case, &c., and an order of removal was made by the State court. Motion was then made to the Circuit Court of the United States to remand the cause, and that court, after holding the motion under consideration for some time, gave judgment to remand, which judgment is brought here by writ of error.
Before rendering judgment, the Circuit Court of the United States allowed the company to file an additional statement of facts for the purpose of showing that the cause was removable, averring its acceptance of the acts of Congress, and the passage of an act by the Legislature of Missouri, authorizing the company to extend its track within the limits of Missouri, and to acquire depot grounds there, which it did; and the fact that said grounds are essential to the operations of the company in carrying out the objects declared in the acts of Congress relating thereto; that the United States loaned its bonds on said portion of the road and has a lien thereon for their payment.
The third suit, Union Pacific Railway Company v. Lucia Knuth, was an action brought by the defendant in error against the company in the District Court of Dodge County, Nebraska, in July, 1883, to recover damages for injuries sustained by her at the company's depot at North Bend, between Omaha and Ogden. A petition for removal of the cause to the Circuit Court of the United States for the District of Nebraska was filed in due time, alleging the incorporation and organization of the company under and by virtue of the acts of Congress of 1862 and 1864, before referred to; that the matter in dispute exceeds $500 exclusive of costs; that the defendant *8 had a defence to the action arising under and by virtue of the laws of the United States, to wit, the act and amendatory act of Congress above referred to, concluding with the usual proffer of bond and prayer for removal. The order of removal was granted, the Circuit Court remanded the cause to the State court, and a writ of error brings the case here. In this case the place of injury was on the main line of the Union Pacific Railway Company.
The fourth case is that of Frank Harwood, who brought a suit against the Union Pacific Railway Company in the District Court of Davis County, Kansas, in July, 1882, to recover damages for an injury received by him at the company's depot at Junction City, Kansas, whilst loading hogs in a car. A petition for removal of the cause was filed in due time, alleging the organization of the company under the act of Congress of July 1, 1862, and the amendments thereto, and other acts of Congress; and that the petitioner had a defence arising under the laws of the United States, and concluding with tendering the proper bond, and a prayer for removal. The State court approved the bond offered, but denied the petition and proceeded with the cause. A verdict being found for plaintiff, the case was taken to the Supreme Court of Kansas by appeal. One of the reasons assigned on the appeal was the denial of the petition to remove the cause. The Supreme Court affirmed the judgment, and a writ of error to the judgment of that court brings the case here.
The three cases of the Texas and Pacific Railway Company were as follows: The first was a suit brought by A.F. McAlister against the company in the District Court of Harrison County, Texas, in April, 1879, to recover damages for an injury to the plaintiff whilst a passenger in one of the company's trains. A petition for removal was filed in due time, alleging that the suit arose under the laws of the United States, and that the defendant was a corporation organized under and by virtue of certain acts of Congress of the United States, to wit an act entitled "An Act to incorporate the Texas Pacific Railroad Company, and to aid in the Construction of its Road, and for other Purposes," approved March 3, 1871, 16 Stat. 573, *9 and an act supplementary thereto, approved May 2, 1872, 17 Stat. 59; that the petitioner had a defence to the action arising under and by virtue of a law of the United States, to wit, said act of incorporation; that it was not a banking, but a railroad corporation authorized to construct, own and maintain a railroad to and from certain places designated in said acts of Congress; concluding with a proffer of a bond and a prayer for removal. The court approved the bond, but refused to remove the cause. The special exceptions to the petition for removal were two; first, that it did not show what the defence was, arising under and by virtue of a law of the United States; secondly, denying the allegation that the defendant was a corporation created and existing under and by virtue of acts of Congress of the United States. Afterwards the defendant filed a plea in abatement, stating that it had filed in the United States Circuit Court at Jefferson, Eastern District of Texas, a certified copy of the record of the pleadings and other papers in the cause, and had the same entered on the docket of said court, in the fall term of 1879, and that plaintiff appeared and moved to remand the cause to the State court, which motion was overruled, and the Circuit Court of the United States entertained jurisdiction of the cause; and the plaintiff agreed to a continuance of the cause in that court to the spring term of 1880; and at the spring term, 1880, procured the same to be continued, and at the fall term, 1880, appeared before said court and consented to a continuance, and at the spring term, 1881, again prosecuted his cause in said court, and continued the same. This plea was excepted to, and overruled by the State court. Judgment was rendered in favor of the plaintiff, and an appeal was taken to the Supreme Court of Texas. That court overruled the error assigned on the refusal of the District Court to remove the cause, on the ground that the defendant's petition for removal did not set forth the defence so as to show that it was a defence arising under the laws of the United States. The court took notice also that the petition was not sworn to, but as that point was not raised by the plaintiff's counsel, they did not consider it. The judgment of the District Court was affirmed; and the case is brought here by writ of error to the judgment of the Supreme Court.
*10 The second case of the Texas and Pacific Railway Company was a suit brought by Laura Kirk against the company in the District Court of the Second Judicial District of Texas, in March, 1881, to recover damages for the death of her husband, caused by the company's cars running off the track. The petition for removal was filed in this case similar in all respects to that in the preceding case. A second petition was filed a few days later, adding an averment that the defendant had fixed its domicil and principal business office at Philadelphia, in the State of Pennsylvania, and was in contemplation of law a citizen of that State. The prayer of the petition was denied, the cause went to trial, judgment was rendered for the plaintiff, an appeal was taken, and the judgment was affirmed by the Supreme Court of Texas, upon the reasons and authority of the previous case of McAlister v. The Texas and Pacific Railway Company. The case is now here by writ of error.
The third and last case of the Texas and Pacific Railway Company was a suit brought by James Murphy against the company (or rather against one of its constituent companies, and afterwards, by amendment against the company itself) in the District Court of Harrison County, Texas, in 1873, to recover damages for an injury received by the plaintiff in getting upon the cars of the company at Jonesville, Texas. The pleadings were amended from time to time on both sides, and the cause was continued, until finally an amended original petition was filed in October, 1878, followed by a petition for removal filed November 1, 1878. The prayer of the petition was denied. The case was afterwards tried, and a verdict and judgment rendered for the plaintiff; and in May, 1883, this judgment was affirmed by the Supreme Court of Texas on appeal. On the question of removal the court followed the decision in the McAlister case above stated. No question was raised in this case on account of the time at which the petition for removal was filed. The application for removal was treated by the court as made under § 640 of the Revised Statutes.
With some diversification of details, it will be perceived that all of these cases depend principally on two questions:
First, whether the fact that the plaintiffs in error are corporations *11 of the United States created by act of Congress makes the suits against them "suits arising under the laws of the United States," within the meaning of the second section of the act of March 3, 1875, before referred to, so as to be removable from the State into the federal courts for that cause: and,
Secondly, whether, if not removable on that ground, they are removable under § 640 of the Revised Statutes, upon the allegation contained in the several petitions of removal, that the defendant has a defence to the action arising under and by virtue of a law of the United States, naming, in some cases, the act of incorporation as the law referred to.
We are of opinion that corporations of the United States, created by and organized under acts of Congress like the plaintiffs in error in these cases, are entitled as such to remove into the Circuit Courts of the United States suits brought against them in the State courts, under and by virtue of the act of March 3, 1875, on the ground that such suits are suits "arising under the laws of the United States." We do not propose to go into a lengthy argument on the subject; we think that the question has been substantially decided long ago by this court. The exhaustive argument of Chief Justice Marshall in the case of Osborn v. Bank of the United States, 9 Wheat. 738, 817-828, delivered more than sixty years ago, and always acquiesced in, renders any further discussion unnecessary to show that a suit by or against a corporation of the United States is a suit arising under the laws of the United States. That argument was the basis of the decision on the jurisdictional question in that case. The precise question, it is true, was as to the power of Congress to authorize the bank to sue and be sued in the United States courts. The words of its charter were, that the bank should be made able and capable in law to "sue and be sued, plead and be impleaded, answer and be answered, defend and be defended, in all State courts having competent jurisdiction, and in any Circuit Court of the United States." The power to create such a jurisdiction in the federal courts rested solely on the truth of the proposition, that a suit by or against the bank would be a suit arising under the laws of the United States; for the Constitution confined the judicial power of the United *12 States to these four classes of cases, namely: first, to cases in law and equity, arising under the Constitution, the laws of the United States, and treaties made under their authority; secondly, to cases affecting ambassadors, other public ministers and consuls; thirdly, to cases of admiralty and maritime jurisdiction; fourthly, to certain controversies depending on the character of the parties, such as controversies to which the United States are a party, those between two or more States, or a State and citizens of another State, or citizens of different States, or citizens of the same State claiming lands under grants of different States, or a State or its citizens and foreign States, citizens or subjects. Now, suits by or against the United States Bank could not possibly, as such, belong to any of these classes except the first, namely, cases in law and equity arising under the Constitution, laws or treaties of the United States; and the Supreme Court, as well as the distinguished counsel who argued the Osborn case, so understood it. Unless, therefore, a case in which the bank was a party was for that reason a case arising under the laws of the United States, Congress would not have had the power to authorize it to sue and be sued in the Circuit Court of the United States. And to this question, to wit, whether such a case was a suit arising under the laws of the United States, the court directed its principal attention. But as it was objected that several questions of general law might arise in a case, besides that which depended upon an act of Congress, the court first disposed of that objection, holding that, as scarcely any case occurs every part of which depends on the Constitution, laws or treaties of the United States, it is sufficient for the purposes of federal jurisdiction if the case necessarily involves a question depending on such Constitution, laws or treaties. The Chief Justice then proceeds as follows:
"We think, then, that when a question to which the judicial power of the Union is extended by the Constitution, forms an ingredient of the original cause, it is in the power of Congress to give the Circuit Courts jurisdiction of that cause, although other questions of fact or law may be involved in it.
"The case of the bank is, we think, a very strong case of *13 this description. The charter of incorporation not only creates it, but gives it every faculty which it possesses. The power to acquire rights of any description, to transact business of any description, to make contracts of any description, to sue on those contracts, is given and measured by its charter, and that charter is a law of the United States. This being can acquire no right, make no contract, bring no suit which is not authorized by a law of the United States. It is not only itself the mere creature of a law, but all its actions and all its rights are dependent on the same law. Can a being, thus constituted, have a case which does not arise literally as well as substantially under the law? Take the case of a contract, which is put as the strongest against the bank.
"When a bank sues, the first question which presents itself, and which lies at the foundation of the cause, is, has this legal entity a right to sue? Has it a right to come, not into this court particularly, but into any court? This depends on a law of the United States. The next question is, has this being a right to make this particular contract? If this question be decided in the negative, the cause is determined against the plaintiff; and this question, too, depends entirely on a law of the United States. These are important questions, and they exist in every possible case... .
"The question forms an original ingredient in every cause. Whether it be in fact relied on or not, in the defence, it is still a part of the cause, and may be relied on. The right of the plaintiff to sue cannot depend on the defence which the defendant may choose to set up. His right to sue is anterior to that defence, and must depend on the state of things when the action is brought. The questions which the case involved, then, must determine its character, whether those questions be made in the cause or not." pages 823, 824.
"It is said that a clear distinction exists between the party and the cause: that the party may originate under a law with which the cause has no connection; and that Congress may, with the same propriety, give a naturalized citizen, who is the mere creature of law, a right to sue in the courts of the United States, as give that right to the bank.
*14 "This distinction is not denied; and if the act of Congress was a simple act of incorporation, and contained nothing more, it might be entitled to great consideration. But the act does not stop with incorporating the bank. It proceeds to bestow upon the being it has made all the faculties and capacities which that being possesses. Every act of the bank grows out of this law, and is tested by it. To use the language of the Constitution, every act of the bank arises out of this law." page 827.
If the case of Osborn v. The Bank of the United States, is to be adhered to as a sound exposition of the Constitution, there is no escape from the conclusion that these suits against the plaintiffs in error, considering the said plaintiffs as corporations created by and organized under the acts of Congress referred to in the several petitions for removal in these cases, were and are suits arising under the laws of the United States. An examination of those acts of Congress shows that the corporations now before us, not only derive their existence, but their powers, their functions, their duties, and a large portion of their resources, from those acts, and, by virtue thereof sustain important relations to the Government of the United States.
A question is made in the cases coming from Kansas about the constitution of the company owning and controlling the line of railroad running through that State. The allegations of the petition for removal in the Myers case (and the others are substantially the same) are: That on February 1, 1880, pursuant to § 16 of the Act of Congress of July 1, 1862, and § 16 of the act of July 2, 1864, the Kansas Pacific Railway Company, a corporation created by the territorial legislature of Kansas, and organized under the laws of said Territory, and the Denver Pacific Railway and Telegraph Company, a corporation created and organized under the laws of the Territory of Colorado, both of which companies are mentioned in the said acts of Congress, and their roads by said acts made a part of the Pacific Railroad system, were by agreement consolidated with the Union Pacific Railroad Company, and said consolidated company assumed and adopted the name of The *15 Union Pacific Railway Company, which assumed, took, and thenceforth has had, by virtue of said agreement of consolidation, possession and ownership of all the railroads and other property, real and personal, of said constituent companies; and has operated and managed the same under and by authority of said acts of Congress, and is governed and controlled by said acts, and is to all intents and purposes and in fact a corporation under the laws of the United States. These allegations, if true (and they must be taken to be so on the application for removal), show that the present corporation, the Union Pacific Railway Company, which is the corporation sued, and which appears and defends the suits, is a corporation formed and organized under an act of Congress. Besides, the legislation of Congress in reference to all the companies so consolidated, in the acts of 1862 and 1864, and subsequent acts, all of which is reviewed and commented on in the opinion of this court in Ames v. Kansas, 111 U.S. 449, shows that all the said companies, before the said consolidation, had received large donations of land, subsidies, powers and privileges from Congress, and had accepted and were subject to important duties to the United States Government, and were subject to a wide control of said government both in the construction and management of their roads and works; and one of said companies, to wit, the Union Pacific Railroad Company, was originally incorporated and organized under said acts, and was strictly a corporation of the United States, subject to the acts of Congress, and having important duties to perform to the government in the prosecution of its business. The facts that the last named company is one of the constituent elements of the consolidated company, and that the entire system of roads now in its possession and under its charge and control constitutes one of the most comprehensive and important mediums of inter-State commerce in the country, and that in all its transactions it is subject to the supervision and control of the Government of the United States, are sufficient, it seems to us, to bring the Kansas cases, as well as the other cases, fairly within the principle of the case of Osborn v. The Bank. The organization of the company under the consolidation proceedings *16 makes it, at least, a corporation de facto, and the legality of its constitution as a corporation will not be inquired into collaterally. It has, as we know, from the case of Ames v. Kansas, been called in question in a regular way by an information in the nature of a quo warranto, and until that, or some other case directly assailing the validity of the consolidation, is decided, the plaintiff in error must be regarded as a corporation organized under and by virtue of the laws of the United States. And the whole being, capacities, authority and obligations of the company thus consolidated are so based upon, permeated by and enveloped in the acts of Congress referred to, that it is impracticable, so far as the operations and transactions of the company are concerned, to disentangle those qualities and capacities, which have their source and foundation in these acts, from those which are derived from State or Territorial authority.
With regard to transactions occurring in Nebraska, on the original line of the Union Pacific Railroad Company, it is not disputed that the present company derives all its corporate and other powers from the acts of Congress and is strictly and purely a United States corporation; and the Texas and Pacific Railway Company stands in the same predicament and occupies the same position in Texas, in relation to consolidation with State organizations, as the Union Pacific does in Kansas, and the same considerations apply to both. It was originally incorporated by the name of the Texas Pacific Railroad Company by act of Congress, approved March 3, 1871, 16 Stat. 573, with power to construct a railroad from Marshall, Texas, to San Diego on the Pacific Coast, and to purchase, or consolidate with, any railroad company, chartered by Congressional, State, or Territorial authority on the same route. Under this act, and by authority of the Legislature of Texas, a consolidation was effected with the Southern Pacific Railroad Company and the Southern Transcontinental Railway Company, corporations of Texas, and by act of Congress of May 2, 1872, 17 Stat. 59, the name of the company was changed to the Texas and Pacific Railway Company. The powers, privileges and advantages given to the company, by Congress, and the duties imposed *17 upon it, are specified in the acts referred to. It comes clearly within the reason and conclusion applied to the Union Pacific Railway Company.
If we are correct, therefore, in the conclusion to which we have come, that suits by and against such corporations are "suits arising under the laws of the United States," then they are, in terms, embraced in § 2 of the act of March 3, 1875, and the cases now under consideration were removable to the respective Circuit Courts of the United States, to which it was sought to remove them, unless any of them were obnoxious to some other objection peculiar to the individual cases.
The point suggested by the Supreme Court of Texas in the case of McAlister, that the petition was not verified by oath, would not be tenable if it were raised by the defendant in error, since it was evidently waived by him at the time, having never been raised or mentioned in any way. The same may be said of the delay in filing the petition in the case of Murphy. See Ayers v. Watson, 113 U.S. 594.
In the Kansas City case, of proceedings for widening a street running through the depot grounds of the company at that place, brought here by writ of error to the Circuit Court of the United States, for the Western District of Missouri, it is contended by the City of Kansas, the defendant in error, first, that the consolidated railway company must be regarded as having the same status as if it were still the Kansas Pacific Railway Company, a corporation of the State of Kansas; secondly, that the case had already been tried once before the Mayor and a jury, and an appeal had been taken to the Circuit Court of Jackson County before the petition for removal was filed, and, therefore, the application came too late; and, thirdly, that the proceeding was not a separate one against the railway company, but a joint one against that company and many other persons, and the appeal of the railway company and other parties carried the whole case to the Circuit Court of Jackson County to be retried in toto; and a removal of the case by the railway company to the Circuit Court of the United States must be a removal of the whole case, and not merely the case of the railway company, which would cast upon *18 the Federal Court an administrative function in local matters, for which it was incompetent and destitute of jurisdiction.
The first of these points has already received consideration. But it may be added, as bearing on this particular case, that the original Kansas company was authorized by § 9 of the Pacific Railroad act of July 1, 1862, to extend its road into the State of Missouri  that is, "to construct a railroad and telegraph line from the Missouri River, at the mouth of the Kansas River, on the south side thereof [which is in the State of Missouri], so as to connect with the Pacific Railroad of Missouri, to the aforesaid point on the one hundredth meridian of longitude," namely, the point where the Union Pacific was to commence. This provision looked to the establishment of a continuous line of railroad from the Mississippi River, at St. Louis (the eastern terminus of the Pacific Railroad of Missouri), to the Pacific Ocean. The power assumed by Congress in giving this authority to the Kansas company was, undoubtedly, assumed to be within the power "to regulate commerce among the several states;" and, although by an act of the Legislature of Missouri, passed in February, 1865, the consent of that State was also given to the extension of the road into its territory, and to its connection with the Missouri road, the fact remains that the company claimed and assumed to exercise its powers under the act of Congress, as well as by the consent of the Legislature of Missouri. So that the right of appropriating the very property in question in this case was claimed under authority of an act of Congress. This circumstance adds strength to the claim of the plaintiff in error that the case was one "arising under the laws of the United States."
The second ground of objection, that the cause had been once tried before the mayor by a jury, and an appeal taken, before a petition for removal was filed, and therefore the application was too late, is answered by the reasoning of this court in the case of The Boom Company v. Patterson, 98 U.S. 403, which was a case very similar in this respect to the present. It was there held that the preliminary proceedings were in the nature of an inquest to ascertain the value of the property *19 condemned, or sought to be condemned by the right of eminent domain, and was "not a suit at law in the ordinary sense of those terms," consequently not a "a suit" within the meaning of the removal acts; but that "when it was transferred to the District Court by appeal from the award of the commissioners, it took, under the statute of the State, the form of a suit at law, and was thenceforth subject to its ordinary rules and incidents." In that case, "the point in issue on the appeal was the compensation to be made to the owner of the land; in other words, the value of the property taken. No other question was open to contestation in the district court." The court, therefore, considered the case to be within the rule laid down in Gaines v. Fuentes, 92 U.S. 10, 20, in which it was held that a controversy between citizens of different States is involved in a suit whenever any property or claim of the parties, capable of pecuniary estimation, is the subject of litigation and is presented by the pleadings for judicial determination." And, in this view, the case of Boom Co. v. Patterson was held to be removable to the federal court. That case, we think, governs the present, so far, at least, as relates to the trial before the mayor, which was in its nature an inquest of valuations and assessments, not having the character of a suit.
A more embarrassing question arises under the third objection raised by the defendant in error, to wit, that the whole case relating to the widening of the street was carried before the Circuit Court of Jackson County by the appeal, and must also be carried to the Circuit Court of the United States in the same condition if the application for a removal is sustained, whereby the latter court will be called upon to exercise administrative functions of a local character to which it is incompetent.
To understand the bearing of this objection, it is necessary to inquire, first, the condition of the case in the Circuit Court of Jackson County on the appeal; and, secondly, the rules which must govern the case on its removal to the federal court, if such a removal should be effected.
The condition of the case in the Circuit Court of Jackson County on the appeal depends upon the statute of Missouri *20 under which the proceedings were had for widening the street. This statute was an amendment to the city charter of the City of Kansas, passed in 1875. We have carefully examined its provisions. After giving very full directions as to the preliminary proceedings, such as the ordinance for opening or widening a street, the notices to be given, the summoning of jurors, and the duties to be performed by them, the recording of their verdict, &c., § 6 declares: "In case the city, or any defendant to such proceedings, shall feel aggrieved by the verdict of the jury, such party so aggrieved may, within twenty days from the time the verdict of the jury is confirmed by the common council, appeal to the circuit court in and for the County of Jackson in this State. If the appeal is taken by either party, the same shall be taken and perfected by the filing with the clerk of the city, within the time aforesaid, such an affidavit as is required by law, in appealing from the judgment of a justice of the peace. If any appeal is so taken, the clerk of the said city shall, within six days from the taking of such appeal, file a complete transcript of the proceedings, and all papers filed and used in the trial, certified by him, with the clerk of the circuit court; and said circuit court shall thereupon become possessed of the cause, and said cause, unless dismissed, shall be tried de novo in said court, and the parties thereto shall have a speedy trial thereof, and to that end said causes shall have precedence over all other causes, and if necessary to a full determination of any question arising in the said cause, the circuit court shall have power to make and bring in other parties to such proceedings, on service of notice upon them for six days, or by publishing a notice to them for the same length of time, in any daily newspaper printed in said City of Kansas; and the parties so made by either kind of notice, and all persons claiming under them, shall be bound by such proceedings; ... and the judge of said circuit court shall have power, and it shall be his duty to hold a sitting of his court for the speedy trial thereof, at the court house in said city, at any time in vacation, and summon a jury before him (unless a jury is waived) for the trial of such appeals only, such trials to be had in all respects, and subject to the same rules and the same law as *21 other trials had in the circuit court, and the same record thereof made and kept. The verdict of the jury, or the finding of the circuit judge sitting as a jury, as the case may be, shall conform in all respects to the requirements of section three of this act for the government of the jury making the first assessment, and the verdict shall have the same force and effect as is provided in regard to said first verdict, and shall be binding on the parties; and the assessments against private property shall be paid in the same time, and until paid bear the same rate of interest as is above provided; and the amount assessed by the jury against property shall be a lien on the several parcels of property, charged from the day the ordinance for the improvement takes effect until paid... . On appeal under this section the jury shall consist of six men, freeholders of the city, and be chosen by the judge; and any finding or verdict in that court shall, unless set aside for good cause, be confirmed, and judgment entered thereon, that the city have and hold the property sought to be taken for the purposes specified in the ordinance providing for the improvement, and pay therefor the amount assessed against the city, and full compensation assessed therefor, and that the several lots and parcels of private property assessed to pay compensation by the verdict or finding stand charged and be bound respectively for the payment of assessments, with interest, as provided in this act... ."
We have not been furnished by the counsel on either side with reference to any decisions of the Missouri courts giving construction to this section. Whether the direction that the cause shall be tried de novo requires that all the valuations and assessments are to be retried, or only those affecting the appellants, is not expressly stated. The principle of valuation and assessment to be followed by the jury is laid down in § 3 of the act, as follows:
"SEC. 3. The jury shall first ascertain the actual damages done to each person or corporation in consequence of the taking of their property for such purposes, without reference to the proposed improvement, as the just compensation to be made therefor; and, second, to pay such compensation, assess against *22 the city the amount of benefit to the city and public generally, inclusive of benefit to any property of the city, and against the several lots and parcels of private property deemed benefited, as determined according to the last section, by the proposed improvement, the balance of such compensation; each lot or parcel of ground to be assessed with an amount bearing the same ratio to such balance as the benefit to each lot or parcel bears to the whole benefit to all the private property assessed. Parties interested may submit proof to the jury, and the latter shall examine personally the property to be taken and assessed... ."
From this it would seem that the balance of damages for property taken, after deducting the amount to be paid by the city, is to be divided and assessed pro rata upon those whose property is benefited, in proportion to the benefit to each. But each piece of property taken is valued by itself, "without reference to the proposed improvement," and the amount of benefit to each piece of property benefited is ascertained separately without reference to the other pieces benefited. It is only after this has been done that the aggregate amounts are ascertained and the damages are assessed pro rata against the pieces of property benefited according to the benefit to each, which is the result of a mere arithmetical calculation. In the State Circuit Court the jury ascertains and finds all these facts, and reports them in one general verdict.
What, then, is the relation in which the railway company, as an appellant, stands towards the city of Kansas in this litigation? Clearly, it has two distinct issues, or grounds of controversy; first, the value of its property taken for the street; secondly, the amount of benefit which the widening of the street will create to its remaining property, not so taken. It may have a third issue, and, judging from the course of the argument, it has a third issue, still more important to it than either of the others, to wit, the right of a city to open a street at all across its depot grounds. Now this controversy involving these three issues, is a distinct controversy between the company and the city. It may be settled in the same trial with the other appeals, and by a single jury; but the controversy is *23 a distinct and separate one, and is capable of being tried distinctly and separately from the others. If the State Circuit Court had equity powers, it might direct a separate issue for the trial of this controversy by itself. It might try the other appeals without a jury (the parties waiving a jury), and try this controversy by a jury.
If this view of the subject is correct, we see no difficulty in removing the controversy between the city of Kansas and the railway company for trial in the Circuit Court of the United States. The proceedings for widening the street, pending in the State court, may have to await the decision of the case in the federal court; and the result of those proceedings may be materially affected by the decision of that case; but that consideration does not affect the separate and distinct character of the controversy between the city and the railway company, although it might raise a question of proper parties in a pure chancery proceeding as between the city and the company. This controversy is to all intents and purposes "a suit." The indirect effect upon the general proceedings for widening the street which would ensue in case the federal court should determine that the City of Kansas had no right to widen the street in the company's depot grounds, or that the valuation of its property was much too small, or the assessment of benefits against it was much too large, furnishes no good reason for depriving the company of its right to remove its suit into a United States court. We think that the case was removable to that court under the act of March 3, 1875.
This disposes of all the cases now before us, and renders it unnecessary to inquire whether the allegations in the several petitions of removal were, or were not, sufficient to bring the cases within Rev. Stat. § 640; or whether this section still remains in force.
The judgments are reversed in all the cases, and the causes will be remanded, with instructions to enter judgments in accordance with this opinion.
MR. CHIEF JUSTICE WAITE, with whom concurred MR. JUSTICE MILLER, dissenting.
*24 I am unable to agree to these judgments. In my opinion Congress did not intend to give the words "arising under the Constitution or laws of the United States," in the act of 1875, the broad meaning they have when used by Chief Justice Marshall in the argument of the opinion in Osborn v. Bank of the United States, 9 Wheat. 738. I do not doubt the power of Congress to authorize suits by or against federal corporations to be brought in the courts of the United States. That was decided in Osborn's case, and with it I have no fault to find. Neither do I doubt that Congress did, in the charters under which these corporations exist, authorize suits by or against them to be brought in the courts of the United States as well as in the courts of the States; but I cannot believe that, if the charters had given jurisdiction to the courts of the United States in only a limited class of actions, and had provided that in all others the suits must be brought in the courts of the proper State, the act of 1875 would have extended the jurisdiction of the courts of the United States to all suits by or against such corporations when the value of the matter in dispute exceeded $500.
The acts of incorporation made no provision for the removal to the courts of the United States of suits begun in a State court. The act of July 27, 1868, ch. 255, § 2, 15 Stat. 227, now Rev. Stat. § 640, did, however, give authority for that purpose in suits brought against the company in a State court "upon the petition of such defendant, verified by oath, stating that such defendant has a defence arising under or by virtue of the Constitution or of any treaty or law of the United States." If all suits by or against, and all defences by, a federal corporation necessarily arise under the laws of the United States "because the charter of incorporation not only creates it, but gives it every faculty which it possesses," why require the corporation, when asking for a removal, to cause an oath to be filed with its petition that it has a defence in the suit which arises under the Constitution or laws? If, "because the power to acquire rights of any description, to transact business of any description, to make contracts of any description, to sue on those contracts, is given and measured by its charter, and *25 that charter a law of the United States," every suit by or against, and every defence to such a suit by, a federal corporation must arise under the laws of the United States, why require it to set forth in its petition for removal that its defence does arise under such a law? If such a corporation cannot "have a case which does not arise literally, as well as substantially, under the law," what the necessity for saying more than that it is such a corporation?
The act of 1868, Rev. Stat. § 640, related specifically to this class of corporations and this class of suits, and it shows distinctly that the words "arising under the laws of the United States" were there used in a restricted sense. I see no evidence of any intention by Congress to use them in any other sense in the act of 1875, when applied to the same kind of suits and to the same kind of corporations.
I am authorized to say that MR. JUSTICE MILLER unites with me in this dissent.