## CLOSTER NAT. BANK v. FEDERAL RESERVE BANK OF NEW YORK. *

(Circuit Court of Appeals, Second Circuit. October 31, 1922.)

### No. 34.

Banks and banking ☜171(1)—Collecting bank held entitled to charge back check on United States Treasurer.

    Where collecting bank reserved right to charge back "at any time and unconditionally" checks on the Treasurer of the United States, *held*, that it could charge back such an item to the bank credited therewith, although over a year had elapsed since it was deposited, and such right

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 43 Sup. Ct. 359, 67 L. Ed. ——.

to charge back was not dependent on the collecting bank's showing that the item was in fact a forgery and alteration, as claimed by the Treasurer.

In Error to the District Court of the United States for the Southern District of New York.

Action by the Closter National Bank against the Federal Reserve Bank of New York, to recover the amount of a check drawn on the Treasurer of the United States. Judgment for defendant, and plaintiff brings error. Affirmed.

David D. Ackerman, of New York City, for plaintiff in error.

L. R. Mason, of New York City, for defendant in error.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

MANTON, Circuit Judge. On March 31, 1919, a check was drawn on the Treasurer of the United States purporting to be for $4,000. It was presented to the plaintiff in error by one representing himself to be the payee therein named, and it was indorsed:

"Pay to the order of any bank or trust company. March 31, 1919. Indorsements guaranteed. The Closter National Bank, Closter, N. J."

This paper was sent on April 3, 1919, to the defendant in error for collection. The plaintiff in error was a member of the Second Federal Reserve district located outside of the state of New York, and elected to collect the check in question through the defendant in error, but did so under the terms and conditions of a circular letter known as No. 37, dated December 29, 1915, and which reads as follows:

"Member banks of this district located outside of the city of New York are notified that on and after January 1, 1916, they may include in their remittances to the Federal Reserve Bank of New York for immediate credit at par, but subject to final payment by the Treasurer of the United States, all government warrants and checks drawn on the Treasurer of the United States. Member banks situated in New York City for the present and until further notified by us are requested to collect such items through the Assistant Treasurer of the United States in New York in accordance with the present practice. When the facilities of the Federal Reserve Bank for handling government deposits have been further developed, member banks in New York City will be notified that government warrants and checks may be sent to this bank through the clearing house, subject to final payment by the Treasurer of the United States.

"The government has for many years exercised the right of returning at any time warrants and checks, which for any cause have not been considered good, and we have been advised that this practice will be continued. In view of this situation the Federal Reserve Bank of New York, as a condition of receiving government warrants and checks on the Treasurer of the United States from member banks for credit, reserves the right to charge back and return to the depositor at any time and unconditionally any such item deposited with the Federal Reserve Bank of New York.

"Your attention is specially invited to the above condition."

The check was entered to the credit of the account of the plaintiff in error in defendant in error's bank. It was thereupon forwarded to the Treasurer of the United States for payment. The check passed through in ordinary course and after had thereon a signature and symbol number, and then the check was perforated as follows: "Paid 4—4—19—M9." The signature of the drawer was compared, and in due

course and in accordance with the usual custom it was audited by the disbursing officer who issued it, and it was examined by the Inspector General of the army. Upon this audit and examination, the Treasurer of the United States notified the defendant in error by letter of May 19, 1920, over a year after the deposit of the check by the plaintiff in error with the defendant in error for collection, that the check had been altered and the indorsement of the payee forged. This letter, sent to the defendant in error, was accompanied by a photostatic copy of the check in question, and a request was made that the Treasurer of the United States be credited with the amount of the item. In accordance with the practice prevailing in the bank of the defendant in error, the Treasurer was credited with the item of $4,000 and within 30 days thereafter he was paid this amount. The plaintiff in error was notified by the defendant in error of the Treasurer's statement that the check was forged and altered, and there was forwarded to the plaintiff in error, with its photostatic copy of the check, a notice of the charge of the amount to the plaintiff in error's account. Thereupon the plaintiff in error objected to the charge and denied liability for the forgery. It resulted in the present action.

The contract between the parties embraces the contents and obligations imposed by the circular letter No. 37. The defendant in error was appointed depository and fiscal agent of the United States, and it offered to certain member banks of the Second Federal Reserve District the option of presenting for payment checks and warrants on the Treasurer of the United States through it, but it made the terms as set forth in the circular above. The plaintiff in error was free to accept or refuse to accept the services of the defendant in error as it saw fit. It might have used other available means for collecting government checks and warrants, if it so desired. While immediately crediting the account of the plaintiff in error with the defendant in error, it was always subjected to final payment by the Treasurer. Crediting the account accorded an advantage to the member banks in affording means for making funds promptly available. In undertaking this service, the defendant in error became a collecting agent. Under the terms of the circular, defendant in error had the right, should the United States at any time not pay, to return such check for any reason which the government might consider good, and the defendant in error could at any time and unconditionally charge back the amount credited to the plaintiff in error, at the same time returning the item so charged back. The right to do so was indefinite as to time; it might be done at any time and unconditionally. It was with this understanding and agreement that the defendant in error gave credit and accepted the obligation to perform this service for the plaintiff in error.

But it is contended that the defendant in error's right to charge back the item is dependent upon its showing that the item was in fact a forgery and alteration as claimed by the Treasurer. By the terms of the collection agreement under which the defendant in error performed the service, the collection agent had the right, if it acted in good faith, to charge back the item to the plaintiff in error's account, without the necessity of establishing a forgery or alteration of the warrant. The

memorandum credit accorded, by the agreement of which the circular letter is a part, was always qualified by the clause "subject to final payment." And by that clause the government has for many years exercised the right of returning at any time warrants and checks, which for any cause have not been considered good, and the plaintiff in error was notified that this practice would be continued as a condition of receiving government warrants and checks on the Treasurer of the United States from member banks for credit, with "the right to charge back at any time and return to the depositor at any time and unconditionally any such item deposited with the Federal Reserve Bank." To place any other construction upon the terms of the circular would be to treat the phrase quoted as surplusage. Under the law, the Treasurer might recover if he paid the warrant because of the forgery, and therefore, as a matter of law, the item was not finally paid.

In United States v. Nat. Exchange Bank, 214 U. S. 302, 29 Sup. Ct. 665, 53 L. Ed. 1006, 16 Ann. Cas. 1184, the United States was held not to be chargeable with knowledge of the signatures of persons entitled to pension checks, and that it could recover from a bank receiving payment from a subtreasury on checks to which the names of payees had been forged. In Cooke v. United States, 91 U. S. 389, 23 L. Ed. 237, the court laid down the rule governing the right of the Treasurer to repudiate payments of counterfeiting items, and said that, if presentation is made at the time when a complete examination cannot be had, such paymen is tentative, and does not amount to an adoption, and that further inquiry may be made, and, if the paper is found to be a counterfeit, it may be returned within a reasonable time, and that a reasonable time is dependent upon the circumstances of each particular case, but that, until a reasonable time has in fact elapsed, the law will not impute negligence on account of delay. And in the instant case this warrant was presented at a time when the War Department was in a great rush of business, owing to an accumulation incident to the conduct of the war.

In Onondaga Bank v. United States, 64 Fed. 703, 12 C. C. A. 407, the government was allowed to recover after two years had elapsed between payment and discovery of the forgery. We think the plaintiff in error may not recover under any of the terms of the contract under which the service of collection was performed, nor may it recover against the defendant in error by reason of any neglect or unreasonable delay on the part of the defendant in error.

Judgment affirmed.