**PEOPLE of the State of Illinois on the relation of Jerome COSENTINO, Treasurer of the State of Illinois, Plaintiff,**

v.

**FEDERAL RESERVE BANK OF CHICAGO and Merchandise National Bank of Chicago, Defendants.**

No. 82 C 2714.

United States District Court, N.D. Illinois, E.D.

Jan. 3, 1984.

Henry K.S. Borecki, Asst. Atty. Gen. of Illinois, Chicago, Ill., for plaintiff.

Richard J. Riordan, Robert K. Larson, Riordan, Larson, Bruckert & McCambridge, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

MORAN, District Judge.

The State of Illinois brought this action to collect $4,900 from the defendants, who had transferred and presented for payment fifteen checks drawn by the State but bearing forged endorsements by the payees.

Essentially, checks with forged endorsements were cashed at currency exchanges, deposited at Merchandise National Bank of Chicago, transferred to the Federal Reserve Bank of Chicago, which in turn presented them to the State for payment. Both Merchandise National Bank and the Federal Reserve Bank endorsed the checks.

In counts 1 and 2 of the complaint the State charges that the Federal Reserve Bank and Merchandise National Bank violated their warranties of good title under the Uniform Commercial Code when presenting the checks with forged endorsements for payment. Ill.Rev.Stat., ch. 26, §§ 3–417(1)(a), 4–207(1)(a).[1] In count 3 the State charges Merchandise National Bank with violating an express guarantee of the genuineness of the prior endorsements on the checks. The State seeks the amount it paid on the checks, prejudgment interest and costs.

The State argues that this court has subject matter jurisdiction over the Federal Reserve Bank under 12 U.S.C. § 632, which reads in pertinent part:

Notwithstanding any other provision of law, all suits of a civil nature at common law or in equity to which any Federal Reserve bank shall be a party shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such suits; and any Federal Reserve bank which is a defendant in any such suit may, at any time before the trial thereof, remove such suit from a State court into the district court of the United States for the proper district by following the procedure for the removal of causes otherwise provided by law. No attachment or execution shall be issued against any Federal Reserve bank or its property before final judgment in any

suit, action, or proceeding in any State, county, municipal, or United States court.

We agree. The state also requests the court to exercise pendent party jurisdiction over Merchandise National Bank. This we decline to do.

## I.

■ Defendants' argument that this court lacks subject matter jurisdiction over the claim against the Federal Reserve Bank can be disposed of quickly. Their position is that § 632 only confers jurisdiction over "civil" suits against or on behalf of federal reserve banks. An action under the U.C.C. is not a "civil" action they claim. Hence, the argument goes, this court has no subject matter jurisdiction.

Section 632 applies, however, to "all suits *of a civil nature*" to which a federal reserve bank is a party. Nothing in the U.C.C. suggests that cases under it are not "civil in nature." The U.C.C. was designed primarily to simplify, clarify and promote the uniformity of commercial law. Ill.Rev. Stat., ch. 26, § 1–102. The U.C.C. makes clear its intimate connection with the common law in Section 1–103:

Unless displaced by the particular provisions of this Act, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.

Courts routinely look to the common law in U.C.C. cases. *See e.g., Avco Delta Corp. Canada Ltd. v. United States*, 459 F.2d 436 (7th Cir.1972); *Northern Trust Co. v. Oxford Speaker Co.*, 109 Ill.App.3d 433, 65 Ill.Dec. 113, 440 N.E.2d 968 (1st Dist.1982);

---

1. Ill.Rev.Stat., ch. 26, § 3–417(1)(a) reads:

(1) Any person who obtains payment or acceptance and any prior transferor warrants to a person who in good faith pays or accepts that

(a) he has a good title to the instrument or is authorized to obtain payment or acceptance on behalf of one who has a good title.

Ill.Rev.Stat., ch. 26, § 4–207(1)(a) reads:

(1) Each customer or collecting bank who obtains payment or acceptance of any item and each prior customer and collecting bank warrants to the payor bank or other payor who in good faith pays or accepts the item that

(a) he has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title.

*GNP Commodities Inc. v. Walsh Heffernan, Co.,* 95 Ill.App.3d 966, 51 Ill.Dec. 245, 420 N.E.2d 659 (1981).

In addition, § 632 was designed to give federal courts jurisdiction over actions involving federal reserve banks to the same extent they had prior to the passage of section 12 of the Act of February 13, 1925, c. 229, 43 Stat. 941 [now at 28 U.S.C. § 1349]. *See* pages 1264–1265 *infra.* During this earlier period federal courts exercised jurisdiction over claims against federal reserve banks much like the one at issue here. *See Closter National Bank v. Federal Reserve Bank of New York,* 285 F. 138 (2d Cir.1922).

## II.

The more difficult issue is whether this court has pendent party jurisdiction over Merchandise National Bank. Pendent party jurisdiction is the joinder of a party who is not otherwise subject to federal jurisdiction. Pendent claim jurisdiction, which is more common, is the joinder of a non-federal claim against a party already subject to federal jurisdiction.

The starting point for pendent jurisdiction analysis is *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). There, the Supreme Court set out a two-part test for the exercise of pendent claim jurisdiction. First, federal courts have power under Art. III, § 2 to exercise pendent jurisdiction where the pendent and federal claims "derive from a common nucleus of operative fact." *Id.* at 725, 86 S.Ct. at 1138. Second, judges have discretion to exercise pendent jurisdiction based on a "consideration of judicial economy, convenience and fairness to litigants." *Id.* at 726, 86 S.Ct. at 1139. Although *Gibbs* was addressed to pendent claim jurisdiction, it prompted most federal courts to exercise jurisdiction over pendent parties. *See Bowers v. Moreno,* 520 F.2d 843, 846–48 (1st Cir.1975); *Curtis v. Everette,* 489 F.2d 516, 519–20 (3d Cir.1973), *cert. denied,* 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974); *Almenares v. Wyman,* 453 F.2d 1075, 1083 (2d Cir.1971), *cert. denied,* 405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815 (1972); *Leather's Best, Inc. v. S.S.*

*Mormaclynx,* 451 F.2d 800, 809–11 (2d Cir. 1971) (admiralty claim supported negligence claim against pendent party); *Connecticut General Life Ins. Co. v. Craton,* 405 F.2d 41, 48 (5th Cir.1968); *State of North Dakota v. Merchants National Bank and Trust Co.,* 634 F.2d 368 (8th Cir.1980). The Seventh and Ninth circuits resisted this trend. *Hampton v. City of Chicago,* 484 F.2d 602 (7th Cir.1974); *Hymer v. Chai,* 407 F.2d 136 (9th Cir.1969).

The Supreme Court cautioned against the blanket exercise of pendent party jurisdiction in *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976). *See also Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). The Court emphasized that the joinder of a party not otherwise subject to federal jurisdiction presented a "more serious obstacle" to the exercise of pendent jurisdiction for both practical and legal reasons:

> The situation with respect to the joining of a new party, however, strikes us as being both factually and legally different from the situation facing the Court in *Gibbs* and its predecessors. From a purely factual point of view, it is one thing to authorize two parties, already present in federal court by virtue of a case over which the court has jurisdiction, to litigate in addition to their federal claim a state-law claim over which there is no independent basis of federal jurisdiction. But it is quite another thing to permit a plaintiff, who has asserted a claim against one defendant with respect to which there is federal jurisdiction, to join an entirely different defendant on the basis of a state-law claim over which there is no independent basis of federal jurisdiction, simply because his claim against the first defendant and his claim against the second defendant "derive from a common nucleus of operative fact." True, the same considerations of judicial economy would be served insofar as plaintiff's claims "are such that he would ordinarily be expected to try them all in one judicial proceeding ...." But the addition of a completely new party would run counter to the well-established

principle that federal courts, as opposed to state trial courts of general jurisdiction, are courts of limited jurisdiction marked out by Congress.

*Aldinger,* 427 U.S. at 14–15, 96 S.Ct. at 2420–2421 (Quoting from *Gibbs,* 383 U.S. at 725, 86 S.Ct. at 1138). *Aldinger* reaffirmed the need to examine constitutional and discretionary issues as outlined in *Gibbs* before extending pendent jurisdiction. It also added a requirement that the court closely scrutinize the statute conferring federal jurisdiction to determine if it explicitly or implicitly denied jurisdiction over pendent parties. *Id.* 427 U.S. at 18, 96 S.Ct. at 2422. *See also United States ex rel. Hoover v. Franzen,* 669 F.2d 433, 437–441 (7th Cir.1982). Far from precluding all pendent party jurisdiction, the Court urged a careful case-by-case analysis of each pendent party question. *Aldinger,* 427 U.S. at 18, 96 S.Ct. at 2422.

### III.

The history of 12 U.S.C. § 632, which gives this court subject matter jurisdiction over the claim against the Federal Reserve Bank, begins with *Osborn v. Bank of the United States,* 9 Wheat. 738, 6 L.Ed. 204 (1824). There the Court, speaking through Chief Justice Marshall, held that Congress could vest the federal courts with jurisdiction over claims by and against the Bank of United States. *Id.* at 816–18. Fifty years later the Court expanded federal court jurisdiction to cover all actions against federally-incorporated institutions. *Pacific Railroad Removal Cases,* 115 U.S. 1, 5 S.Ct. 1113, 29 L.Ed. 319 (1885).

The *Pacific Railroad* decision apparently subjected federal courts to a flood of litigation. *See generally Murphy v. Colonial Federal Savings & Loan Association,* 388 F.2d 609 (2d Cir.1967). This litigation included common law cases with the Federal Reserve Bank as a party. *See City of Douglas v. Federal Reserve Bank of Dal-*

*las,* 2 F.2d 818 (5th Cir.1924), *aff'd,* 271 U.S. 489, 46 S.Ct. 554, 70 L.Ed. 1051 (1926); *Closter National Bank v. Federal Reserve Bank of New York,* 285 F. 138 (2d Cir. 1922); *Federal Reserve Bank of Richmond v. Malloy,* 291 F. 763 (4th Cir.1923), *aff'd,* 264 U.S. 160, 169, 44 S.Ct. 296, 299, 68 L.Ed. 617 (1924). In 1925 Congress responded with a statute that limited the jurisdiction of the federal courts over actions involving federally-incorporated institutions:

> That no district court shall have jurisdiction of any action or suit by or against any corporation upon the ground that it was incorporated by or under an Act of Congress: *Provided,* That this section shall not apply to any suit, action, or proceeding brought by or against a corporation incorporated by or under an Act of Congress wherein the Government of the United States is the owner of more than one-half of its capital stock.

Act of February 13, 1925, ch. 229, § 12, 43 Stat. 941 [Now at 28 U.S.C. § 1349]. This statute ended federal jurisdiction over actions involving a federal reserve bank where there was no independent jurisdictional base. *See Federal Reserve Bank of Kansas City v. Omaha National Bank,* 45 F.2d 511 (8th Cir.1930).

Congress created two exceptions to the jurisdictional limits established by the 1925 Act. The first involved banking associations. *See* 28 U.S.C. § 1348. The second was 12 U.S.C. § 632, at issue here. Section 632 was passed as part of the Glass-Stengall Banking Act of 1932, which extended the control of the federal government over the operations of the federal reserve banks. Act of June 16, 1933, ch. 89, § 15, 48 Stat. 162. The legislative history of § 632 is not extensive. Nevertheless, a letter of recommendation from the Federal Reserve Board to the Senate Banking Committee, relevant portions of which are reprinted in the margin,[2] make clear the purposes of § 632.

---

**2.** The relevant portion of the set of recommendations sent to the Senate Banking Committee by the Federal Reserve Board on April 8, 1933, which pertains to § 632, reads as follows:

> The Federal courts formerly had jurisdiction of suits by and against Federal reserve

banks because of the fact that Federal reserve banks are incorporated under an Act of Congress; but Section 12 of the Act of February 13, 1925, provides that no district court of the United States shall have jurisdiction of any action or suit by or against any corporation

First, § 632 was designed to avoid inconsistent state court interpretations of the Federal Reserve Act and accompanying regulations. Second, § 632 recognized that federal reserve banks were deemed citizens of no state and thus could not remove cases against them to federal court on diversity grounds. Third, the extension of federal jurisdiction over federal reserve banks was based on a recognition of the central role the federal reserve banks played in the nation's economy and their actions as fiscal agents and sub-treasuries for the federal government. *See also Federal Reserve Bank of Richmond v. Kalin*, 77 F.2d 50, 51 (4th Cir.1935). ("[I]t was doubtless the intention of Congress to grant full rights of recourse to [federal reserve banks] which had been important agencies of the federal government in its control of banking and currency.") In the half-century since the passage of § 632 there has been no important changes in either the language granting federal jurisdiction or in the judicial interpretation of that provision.

## IV.

█ The history of § 632 reveals that it is a limited grant of federal jurisdiction necessitated by the unique role played by the federal reserve banks. Congress intended 28 U.S.C. § 1349 to limit the jurisdiction of the federal courts over federally-chartered institutions. Section 632 is a carefully delineated exception. A fair implication from this history is that Congress never intended § 632 to be the basis for pendent party jurisdiction in a case involving a state law claim. Pendent party jurisdiction here would conflict with Congress' intent to limit the amount of litigation in federal courts involving federally-chartered corporations. Our refusal to exercise pendent party jurisdiction over Merchandise National Bank does not threaten inconsistent state court interpretations of the Federal Reserve Act and accompanying regulations. Nor would the assertion of federal jurisdiction over a pendent party in a case involving a state law issue relate to the vitally important banking and currency functions of federal reserve banks which prompted the passage of § 632.

In its brief the State points to a number of cases where the federal court used an "anchor" claim which gave it jurisdiction over one party as a basis for exercising pendent party jurisdiction. In those cases the anchor claims arose from a federal

upon the ground that it was incorporated by or under an Act of Congress, except corporations in which the Government of the United States is the owner of more than one-half of the capital stock.

It is not believed that Congress had the Federal reserve banks in mind when this amendment was enacted; but its terms deprive the United States district courts of jurisdiction of all suits by or against Federal reserve banks, unless a question involving the interpretation of the Constitution of the United States or of some Federal statute is raised by the original pleadings of the plaintiff. The provisions of the Federal Reserve Act or the regulations of the Federal Reserve Board are frequently the grounds upon which Federal reserve banks defend suits brought against them; but the fact that such questions are raised in the defendant's pleadings is not a ground of jurisdiction in the United States district courts. The Federal reserve banks are thus forced to defend in the State courts suits which turn upon essentially Federal questions and which result in nationally important interpretations of the Federal Reserve Act.

Unlike national banks, the Federal reserve banks cannot remove suits brought against them by persons located in other States to the United States district courts on the ground of diversity of citizenship, because the Supreme Court of the United States has held that a Federal corporation is not a citizen of any State, and there is no provision in the Federal Reserve Act similar to that in the National Bank Act providing that they shall be deemed citizens of the States in which they are located.

The Act of February 13, 1925, makes an exception in the case of corporations in which the Government of the United States is the owner of more than one-half of the capital stock; and it would seem that the exception should logically be extended to include Federal reserve banks, since they act as fiscal agents of the United States and perform certain functions of subtreasuries as well as many other important functions for the Government. Moreover, in the event of the liquidation of the Federal reserve banks, all of their surplus, which amounts to nearly twice their paid-in capital stock, would become the property of the United States.

statute and federal jurisdiction was exclusive. Federal courts were the only place where all the claims in each case could be tried together. *See Aldinger,* 427 U.S. at 18, 96 S.Ct. at 2422. Here the grant of jurisdiction is specific to one institution, which highlights the limited scope of § 632.

Congress' intention of giving federal reserve banks access to a federal forum under all circumstances but in restricting access by others which seek to reach third parties is not inconsistent with considerations of judicial economy, nor does it inhibit the federal reserve banks, for which the jurisdictional grant was enacted, from having full rights of recourse in federal court. The doctrines of removal and ancillary jurisdiction ensure that common law suits brought against a federal reserve bank and third parties can be adjudicated in a single federal forum.

Section 632 provides in part that a "Federal reserve bank which is a defendant in any such suit may, at any time before the trial thereof, remove such suit from a State court into the district court of the United States for the proper district ...." Courts interpreting similar provisions have concluded that even if the suit in state court includes parties which could not have been joined in an original federal action, the federal entity can remove the entire suit. *See, e.g., Kasdon v. G.W. Zierden Landscaping, Inc.,* 512 F.Supp. 172 (D.Md.1981) (12 U.S.C. § 1444). Two leading commentators also agree that removal of the entire action is appropriate under statutes explicitly authorizing removal. Wright, Miller & Cooper, 14 *Federal Practice and Procedure,* § 3729 at 705–06; 1A Moore, *Federal Practice,* ¶ 0.166. Thus, if the state brings an action in state court against the federal reserve bank and a local bank, the federal reserve bank can remove the entire action for adjudication in a single federal forum.

If it were the only party being sued by the state in federal court, the federal reserve bank would likely implead as a third-party defendant the bank from which it received the forged checks. By exercising ancillary jurisdiction the federal court could hear this third party action, over which it has no independent base for jurisdiction. It has long been well established that a federal court can exercise ancillary jurisdiction over claims arising out of the same core of facts as the action before it which the defendant asserts against third party. *See Dery v. Wyer,* 265 F.2d 804, 807 (7th Cir.1959). *Compare Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978) (no jurisdiction over plaintiff's claim against a non-diverse third party defendant). Furthermore, if the state sues only the federal reserve bank in state court, the bank can remove the case and then implead the third party.

## CONCLUSION

This court has subject matter jurisdiction under 12 U.S.C. § 632 over the State's claim against the Federal Reserve Bank of Chicago. The limited scope of § 632, however, does not allow it to exercise pendent party jurisdiction over Merchandise National Bank of Chicago. Counts 2 and 3 of the complaint are accordingly dismissed.