FOX v. MACKAY et al.

(Circuit Court, N. D. California. February 12, 1894.)

1. REMOVAL—SEPARABLE CONTROVERSY—JOINT AND SEVERAL ACTIONS.
The complaint alleged that defendant M. and his associates owned a controlling interest in the stock of a certain corporation, and by means thereof chose certain persons as directors, and through them defrauded the corporation and its other stockholders, of whom plaintiff was one, of large sums of money; and this money the complainant sought to recover. Only part of the alleged directors were made defendants, and one of M.'s associates was also omitted. *Held* that, the right of action being joint and several, bringing the action against part of the tort-feasors only is not an election to treat it as several only, and hence there is not a separable controversy between plaintiff and M., within the meaning of the removal acts.

2. SAME—SEVERAL ACCOUNTING.
The complaint concluded with a prayer that "defendants may account for all the wrongs alleged, and on such accounting repay all sums realized by said defendants, or any of them." *Held*, that this is not a prayer for a several account, and the controversy is not separable on that ground.

3. SAME—NOMINAL PARTIES.
Under the allegations of the complaint, the directors appear to have been actual participants in the frauds charged, and hence they are not merely nominal parties, who can be disregarded in arranging the parties to the controversy for purposes of removal.

H. S. Siebert, for plaintiff.
Garber, Boalt & Bishop and W. E. F. Deal, for defendants.

McKENNA, Circuit Judge, (orally.) This action was originally brought in the superior court of San Francisco, and transferred here on the petition of defendant Mackay, on the ground that the real plaintiffs are Fox and the Consolidated California & Virginia Mining Company, and, as between him and them, there is a controversy separable from that between them and the other defendants, and that he is a citizen of the state of Nevada. The complaint is very long, and, for the purpose of considering the point in contention, it is only necessary to say that it contains a cause or causes of action in tort. It alleges that the defendants Mackay, Jones, and Flood were the owners of the majority of the stock of the Consolidated California & Virginia Mining Company, and by reason thereof the defendants caused Fish, Follis, and O'Connor, and certain others, from time to time to be elected directors of said corporation, and through them cheated and defrauded it and its stockholders by con-

tracts made with the Comstock Mill & Mining Company, also controlled by said Mackay, Jones, and Flood, by which the latter company was paid an exorbitant price for crushing the ores of the Consolidated California & Virginia Mining Company, and that, besides, the ores were crushed in an imperfect manner, not more than 70 per cent. of the metal thereof being extracted, and that the "slimes, tailings, and residues" obtained by said milling company and Mackay, Jones, and Flood were worth the sum of $2,500,000, or thereabouts; that Mackay, Jones, and Flood, through said other defendants as directors of the Consolidated California & Virginia Mining Company, caused to be issued certain shares of stock to certain persons for their benefit, which were worth in the open market, within a year afterwards, over $2,000,000, and that dividends were paid thereon in the full sum of $567,918. The plaintiff further alleges that the stockholders of said corporation, other than the said individual defendants, are scattered throughout the world, and that it is impracticable to make them all parties, and he therefore sues for all; that the directors of said corporation were requested to bring the suit, but that they refused, having colluded and confederated with said Mackay and Jones, and now are colluding and confederating with them.

The frauds alleged in the complaint cover a considerable period of time, and during such time several sets of directors were successively elected. Those elected were Fish, Hull, Follis, O'Connor, Frier, Havens, and Wells; Fish and O'Connor and Hull for the whole time. Hull is dead; Havens has been a director only since February 26, 1886. Fish, O'Connor, and Wells only are made defendants; the other directors are omitted. Flood died on the 1st of December, 1889, and his legal representatives are not made parties to the suit. It is contended by defendant Mackay that the liability of defendants is joint and several, and that plaintiff has elected to treat it as several by omitting some of the tort-feasors, and therefore the controversy as to him was made separable. This view is supported by counsel with very great strength of reasoning, but I am unable, nevertheless, to concur in it.

The language of the act of congress, as amended in 1887, is:

"And when in any suit mentioned in this section there shall be a controversy which is wholly between citizens of different states, and which can be fully determined as between them, then one or more of the defendants actually interested in said controversy may remove said suit into the circuit court of the United States for the proper district."

"A separable controversy does not mean a separable cause of action," Judge Wallace said in Boyd v. Gill, 19 Fed. 148, following the decisions of the circuit court of the second and eighth circuits. On the other hand, it was held in the seventh circuit, whenever the suit was founded on a cause of action which could be made joint or several at the election of the plaintiff, a nonresident defendant could remove the suit, though sued jointly with residents of the same state as plaintiff. The test adopted was that, because the defendants were severally liable, the controversy was several. A different test, however, was applied by the supreme

court in Railroad Co. v. Ide, 114 U. S. 52, 5 Sup. Ct. 735, and Pirie v. Tvedt, 115 U. S. 42, 43, 5 Sup. Ct. 1034, 1161. The test in these cases for both actions on contract and actions on torts was made to be that which the plaintiff made it in his pleadings. In the first case the court said:

"The cause of action is the subject-matter of the controversy; and that is, for all the purposes of the suit, whatever the plaintiff declares it to be in his pleadings. * * * The controversy is the case, and the case is not divisible."

In the latter case, which was an action in tort, the court said:

"We are unable to distinguish this case in principle from that."

But in the case in 115 U. S., 5 Sup. Ct.:

"There is here, according to the complaint, but a single cause of action, and that is the alleged malicious prosecution of the plaintiffs by all the defendants, acting in concert. The cause of action is several as well as joint, and the plaintiffs might have sued each defendant separately, or all jointly. It was for the plaintiffs to elect which course to pursue. They did elect to proceed against all jointly, and to this the defendants are not permitted to object. The fact that a judgment in the action may be rendered against a part of the defendants, only, does not divide a joint action in tort into separate parts any more than it does a joint action on contract."

The defendant, however, contends that the plaintiff, by suing less than all of the tort-feasors, has elected to make the action several as to all, though a number be joined in the suit, and the controversy is separable as to each; and it is further contended that this view is supported by the decisions of the supreme court supra. In both cases all the defendants were sued, but that was not the determining test. It is true, the court said, "The plaintiff might have sued each defendant separately, or all jointly," but it does. not mean to say, as a literal construction of its language would make it say, that plaintiff could not have sued some of the defendants, but must have sued one or all. It was the plaintiff's right to sue some; not all, or one. Electing to so sue some, the controversy would then be declared by the pleadings to be whether, under the facts alleged, the defendants sued would all be liable to him. This would be the case, and it is as indivisible as to the defendants sued as if others were joined. To join others would extend the remedy to them as well; not change or divide the grounds of it. The controversy is single when it seeks the same remedy against all the defendants sued on the same facts; that is, on the same case. Hence the expression of the supreme court in Railroad Co. v. Ide, supra, "The controversy is the case, and the case is not divisible."

The defendant further argues, but not with much insistence, that the prayer of the complaint is for several, as well as joint, accounting, and the action is therefore brought within the doctrine laid down in Boyd v. Gill, 19 Fed. 149,—which is, when a several account is prayed for, the controversy is separate,—and 21 Blatchf. 543. I do not so read the complaint. Its prayer is that the defendants—all of them—"account * * * for all the wrongs, frauds, and breaches of trust * * * alleged, * * * and, on

such accounting, repay and restore  *  *  *  all sums gained, realized, or obtained by said defendants, or any of them,  *  *  * and such other further relief as may be proper in the premises." The right of the plaintiff is to have restored to the company he represents all sums it was defrauded of, if it was defrauded; and the measure of relief would be such sums, whether they were lodged in the hands of one defendant or distributed evenly or unevenly among them all.   The accounting is prayed against all.

The defendant further urges that the directors are not connected with the frauds, and are but nominal parties, and must be disregarded in arranging the parties to the controversy.   But the complaint charges them with being participants in the acts of fraud; maybe not as directly and precisely as it might, but sufficiently for the purposes of this motion.   They could not have been ignorant and inactive.   As to the other defendants, they may be said to have been instruments as to the company, whose officers they were in every proper sense,—they were principals in the frauds.   It would be extending too much indulgence to assume that the officers of a valuable mine, which "had acquired," to quote the complaint, "a high reputation for the known richness of its ore deposits," should, besides paying an exorbitant price for milling them, accept, during a series of years, only 70 per cent. of their real product,. giving to others two and a half millions of dollars, the property of the company which they represented.   Again, it would be extending too much indulgence to assume that they were ignorant of the value of the stock of the company which they issued.   It was their duty to know.   I think, therefore, that the complaint, as far as this motion is concerned, is sufficient to connect O'Connor, Fish, and Wells with the frauds alleged.   The motion to remand is therefore granted.