910 F.2d 1257
 59 USLW 2187
 In the Matter of MEYERLAND CO., and William M. Adkinson, Debtors.
FEDERAL DEPOSIT INSURANCE CORP. as Manager of the FSLIC
Resolution Fund as Receiver for Continental
Savings Association, Appellant,
v.
MEYERLAND CO., and William Adkinson, Appellees.
 No. 89-6118.
 United States Court of Appeals,
Fifth Circuit.
 Sept. 7, 1990.
Rehearing and Rehearing En Banc
Denied Oct. 5, 1990.
 
 Bruce R. Coulombe, Lee Larkin, Andrews & Kurth, Houston, Tex., Richard J. Osterman, Jr., Atty., F.D.I.C., Washington, D.C., for F.D.I.C.
 Michael L. O'Brien, Houston, Tex., for Meyerland Co.
 Daniel Kistler, Robert L. Collins, Houston, Tex., for Adkinson.
 Appeal from the United States District Court for the Southern District of Texas.
 Before GARZA, HIGGINBOTHAM and DUHE, Circuit Judges.
 DUHE, Circuit Judge:
 
 
 1
 Proceedings Below and Appellate Jurisdiction
 
 
 2
 Meyerland Co. and William M. Adkinson sued Continental Savings Association ("Continental") for, among other things, usury and fraud in state court. Continental counterclaimed for fraud and breach of contract. The trial court awarded Continental $30,031,089.99 and Adkinson $1,124,109.59 in damages. Meyerland and Adkinson appealed.
 
 
 3
 After the appeal was filed, the Federal Home Loan Bank Board declared Continental insolvent and appointed the Federal Savings and Loan Insurance Corporation (FSLIC) as receiver. The FSLIC removed to federal district court which remanded on April 21, 1989.
 
 
 4
 On August 9, 1989, the Financial Institutions Reform, Recovery and Enforcement Act (FIRREA), Pub.L. 101-73, 103 Stat. 183 was enacted. The Federal Deposit Insurance Corporation (FDIC) succeeded the FSLIC as the receiver of Continental and the FDIC then removed this case on September 7, 1989 under Sec. 209 of the FIRREA (12 U.S.C. Sec. 1819(b)(2)(B)).[1] The district court again remanded and awarded the appellees $2,500 in sanctions.
 
 
 5
 The FDIC appeals. Although remand orders are generally not appealable, 12 U.S.C. Sec. 1819(b)(2)(C) authorizes an appeal in this case. This appeal presents two issues: (1) Whether 12 U.S.C. Sec. 1819(b)(2) authorizes the FDIC to remove a state court appellate proceeding; and (2) Whether the district court erred in awarding sanctions.
 
 
 6
 (1) Whether Congress meant what it said.
 
 12 U.S.C. Sec. 1819(b)(2) states:
 
 7
 (A) In general
 
 
 8
 Except as provided in subparagraph (D), all suits of a civil nature at common law or in equity to which the Corporation, in any capacity, is a party shall be deemed to arise under the laws of the United States.
 
 
 9
 (B) Removal
 
 
 10
 Except as provided in subparagraph (D), the Corporation may ... remove any such action, suit, or proceeding from a state court to the appropriate United States district court. (emphasis supplied).
 
 
 11
 The exception in subparagraph (D) does not apply to the instant case and the sole issue to be decided, therefore, is whether Congress meant to authorize the FDIC to remove a state court appellate proceeding. To decide this issue, we must first determine (A) whether Article Three authorizes jurisdiction over this type of removal and, (B) if so, whether Congress meant to authorize appellate removal when it enacted Sec. 1819(b)(2).[2]
 
 
 12
 (A) Article Three
 
 
 13
 It is black letter law that "Congress may not expand the jurisdiction of the federal courts beyond the bounds established by the Constitution." Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 491, 103 S.Ct. 1962, 1970, 76 L.Ed.2d 81 (1983). The power of Congress to authorize removal of cases on appeal has been repeatedly affirmed. See Martin v. Hunter's Lessee, 14 U.S. (1 Wheat.) 304, 349, 4 L.Ed. 97 (1816) ("Congress ... may authorize removal either before or after judgment."); Gaines v. Fuentes, 92 U.S. 10, 18, 23 L.Ed. 524 (1876); and Tennessee v. Davis, 100 U.S. 257, 269, 25 L.Ed. 648 (1880). Congress, however, has seldom chosen to exercise this power and we must decide whether it has done so by enacting the FDIC removal statute.[3]
 
 
 14
 (B) The FDIC Removal Statute
 
 
 15
 The FDIC argues that 12 U.S.C. Sec. 1819(b)(2) means exactly what it says and since it does not exclude appellate removal, then it authorizes appellate removal. We would agree with the FDIC that the plain meaning of the statute controls its interpretation. See Mills v. Director, 877 F.2d 356, 362 (5th Cir.1989) (en banc) (Duhe, J., dissenting). Jurisdictional statutes, however, must also be interpreted with an eye towards history. Justice Frankfurter in Romero v. International Terminal Operating Co., 358 U.S. 354, 360-379, 79 S.Ct. 468, 473-484, 3 L.Ed.2d 368 (1959) explained:
 
 
 16
 [a]bstractly stated, the problem is the ordinary task of a court to apply the words of a statute according to their proper construction. But 'proper construction' is not satisfied by taking the words as if they were self-contained phrases. So considered, the words do not yield the meaning of the statute. The words we have to construe are not only words with a history. They express an enactment that is part of a serial, and a serial that must be related to Article III of the Constitution, the watershed of all judiciary legislation, and to the enactments which have derived from that Article.
 
 
 17
 . . . . .
 
 
 18
 If the history of the interpretation of judiciary legislation teaches anything, it teaches the duty to reject treating such statutes as a wooden set of self-sufficient words.... [We must not forget that it] is a statute, not a Constitution, we are expounding.
 
 
 19
 History tells us clearly what Congress meant when it enacted 12 U.S.C. Sec. 1819(b)(2). In Osborn v. Bank of the United States, 22 U.S. (9 Wheat) 738, 822, 6 L.Ed. 204 (1824) Justice Marshall expounded on the outer limits of Article Three jurisdiction: "when a question to which the judicial power of the Union is extended by the constitution forms an ingredient of the original cause, it is in the power of Congress to give the circuit courts jurisdiction of that cause." Osborn "reflects a broad conception of 'arising under' jurisdiction, according to which Congress may confer on the federal courts jurisdiction over any case or controversy that may call for the application of federal law." Verlinden, 461 U.S. at 492, 103 S.Ct. at 1970. Even though the only issues to be decided are ones of state law, Article Three permits the exercise of jurisdiction if one of the parties is a federal corporation. See, e.g., The Bank of the United States v. The Planters' Bank of Georgia, 22 U.S. (9 Wheat) 904, 6 L.Ed. 244 (1824). Congress however, did not actually grant the lower federal courts removal jurisdiction over federal question cases until 1875.[4] This statute, the predecessor to 28 U.S.C. Sec. 1441, was given an expansive interpretation in the Pacific Railroad Removal Cases, 115 U.S. 1, 5 S.Ct. 1113, 29 L.Ed. 319 (1885). The Pacific Railroad Court relied on Osborn to hold that "every case, irrespective of its nature, brought by or against a federally charted corporation is a suit arising under the 'laws of the United States.' " Frankfurter, Distribution of Judicial Power Between United States and State Courts, 13 Cornell L.Q. 499, 509 (1928). The expansive reading given by the Pacific Railroad Court to "arising under" was soon curtailed. Id. See also Romero, 358 U.S. at 379 n. 50, 79 S.Ct. at 484 n. 50. 28 U.S.C. Sec. 1331, for example, is interpreted more narrowly than the Constitution permits. Verlinden, 461 U.S. at 494-95, 103 S.Ct. at 1971-72. The general removal statute, 28 U.S.C. Sec. 1441, is also not interpreted as broadly as it could be. See Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941) (the "policy of the successive acts of Congress regulating the jurisdiction of the federal courts is one calling for the strict construction of [removal]") and Willy v. Coastal Corp., 855 F.2d 1160 (5th Cir.1988). See also Collins, The Unhappy History of Federal Question Removal, 71 Iowa L.Rev. 717 (1986). It is clear that no federal jurisdiction exists over the present dispute under either 28 U.S.C. Sec. 1331 or Sec. 1441 because the issues are governed by state law and federal law is a small ingredient of the dispute. See Gully v. First National Bank at Meridian, 299 U.S. 109, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936) (for a suit to "arise under" federal law, a "right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action") and Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). It is equally clear that Congress enacted 12 U.S.C. Sec. 1819 precisely so that the FDIC could enjoy federal question jurisdiction similar to that articulated in Osborn and the Pacific Railroad Removal Cases. See Pernie Bailey Drilling Co. v. FDIC, 905 F.2d 78, 79-80 (5th Cir.1990); Franklin National Securities Litigation v. Andersen, 532 F.2d 842 (2nd Cir.1976); and FDIC v. George-Howard, 153 F.2d 591 (8th Cir.), cert. denied, 329 U.S. 719, 67 S.Ct. 53, 91 L.Ed. 623 (1946). Thus, Sec. 1819 authorizes the exercise of jurisdiction over a dispute which involves only issues of state law and to which the FDIC is a party.
 
 
 20
 History does not tell us, however, whether 12 U.S.C. Sec. 1819 supports the exercise of removal jurisdiction over an appellate proceeding. The appellants rely on Barrow v. Hunton, 99 U.S. 80, 25 L.Ed. 407 (1879) to argue that the removal of a post-judgment proceeding is improper. In Barrow, Hunton won a state court judgment. The judgment debtor moved to have the judgment nullified and Hunton removed. The Supreme Court reasoned that if the removed proceeding was an appeal or similar to an appeal of a state court judgment, then removal would be improper because "[o]therwise, the [lower federal courts] would become invested with power to control the proceedings in the state courts, or would have appellate jurisdiction over them.... Such a result would be totally inadmissible. Id. 99 U.S. at 83.
 
 
 21
 The appellants' reliance on Barrow, however, is misplaced. First, the limits which Barrow placed on removal jurisdiction are statutory.[5] Thus, even if we were to concede that Barrow is still good law for the purposes of 28 U.S.C. Sec. 1441,[6] it is not conclusive for our purposes. Congress clearly intended that the FDIC removal statute be given a different interpretation than the general removal statute. Second, Barrow relied on an interpretation of removal which may well be no longer valid. Barrow rests on the notion that removal is like an appeal because the proceeding did not commence in federal court. The modern view of removal, however, is that it is more closely akin to original than to appellate jurisdiction because once the case is removed, it is treated as if it had commenced in federal court. See Freeman v. Bee Machine Co., 319 U.S. 448, 452, 63 S.Ct. 1146, 87 L.Ed. 1509, rehearing denied, 320 U.S. 809, 64 S.Ct. 27, 88 L.Ed. 489 (1943), and Savell v. Southern Ry., 93 F.2d 377, 379 (5th Cir.1937). See generally J. Dillon, The Removal of Causes from State Courts to Federal Courts with Forms 4 (5th ed. 1889).
 
 
 22
 Although Barrow does not stand in the way of exercising jurisdiction over the instant dispute, the bare language of 12 U.S.C. Sec. 1819 does not clearly support the exercise of jurisdiction either. That the FDIC has the authority to remove suits which "arise under" the laws of the United States to the "appropriate United States district court" does not establish the right of the FDIC to remove appellate proceedings. The FDIC contends that this right is established by 12 U.S.C. Sec. 1821(d)(13)(B) which states "In the event of any appealable judgment, the Corporation as conservator or receiver shall have all the rights and remedies available to the insured depository ... and the Corporation in its corporate capacity, including removal to Federal court and all appellate rights." This language makes it clear that the FDIC may remove a suit after judgment. It does not, however, clearly establish that the FDIC may remove a case which is on appeal. One reading of 12 U.S.C. Sec. 1821(d)(13)(B) when it is read in pari materia with the FDIC removal statute, 12 U.S.C. Sec. 1819(b)(2)(B), suggests that a suit may not be removed once it is on appeal because a case may be removed only to a federal district court. The majority of the cases involving post-judgment removal were removed from a state district court, not the state court of appeals, to the federal district court and then an appeal was filed or an attack was made on the judgment via Fed.R.Civ.P. 60. See, e.g., Beighley v. FDIC, 868 F.2d 776, 779 (5th Cir.1989); Northshore Development, Inc. v. Lee, 835 F.2d 580, 582 (5th Cir.1988); and In re Savers Federal Savings and Loan Ass'n, 872 F.2d 963, 964 (11th Cir.1989).[7]
 
 
 23
 In In re Savers a debtor sued a financial institution in state court claiming as here, breach of contract and fraud and the institution counter claimed to recover on the debtor's note. After judgment and after denial of post-trial motions for hearing, new trial, and remittitur, the FSLIC was appointed conservator of the institution. It then filed notice of removal. The district court remanded concluding that the case was completed in state court and that defendant was, in effect, seeking appeal. The Eleventh Circuit granted mandamus and vacated the remand on the basis of Sec. 1819(b)(2)(B).
 
 
 24
 The Eleventh Circuit framed the question as "whether after there has been a final judgment by the state trial court, but when the period for appeal has not yet lapsed, a case ceased to be an 'action from a state court.' " 872 F.2d at 965-66. The court concluded that "[w]e can discern no reason to confine the interpretation of 'action' to actions that have not rendered judgment.... Had Congress intended to limit the removal power of FSLIC to suits pending before a state trial court, it could have explicitly stated as much, as it did in ... 12 U.S.C. Sec. 632...." Id. at 966.
 
 
 25
 In the instant case, it is true, removal is sought from the state appellate court whereas in Savers no appeal had yet been filed. The significant factor, however, is that state appellate proceedings had not yet been exhausted when removal was effected. Accord Murray v. Ford Motor Company, 770 F.2d 461, 463 (5th Cir.1985) (per curiam); Butner v. Neustadter, 324 F.2d 783 (9th Cir.1963); Munsey v. Testworth Laboratories, Inc., 227 F.2d 902, 903 (6th Cir.1955) (per curiam). In FDIC v. Yancey Camp Development, 889 F.2d 647, 648 (5th Cir.1989), a case which was on appeal, we allowed removal and the district court set aside a default judgment. We conclude that the FDIC is entitled to remove the instant dispute as well.
 
 C. Procedure
 
 26
 Our decisions here and in Yancey Camp, however, entail certain procedural difficulties which we must now face. In Yancey Camp, the case was removed from the state court of appeals and the federal district court then entertained an attack on the removed judgment under Fed.R.Civ.P. 60. Once a case is removed, however, the federal court takes the case as it finds it on removal. Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers, 415 U.S. 423, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974); In re Savers Federal Savings and Loan Ass'n, 872 F.2d 963, 966 (11th Cir.1989); and Butner v. Neustadter, 324 F.2d 783, 785 (9th Cir.1963). Federal courts must "treat everything that occurred in the state court as if it had taken place" in federal court. In re Savers, 872 F.2d at 966. Thus, since the instant case was on appeal in the state court when it was removed, it will be on appeal once the merits of this dispute are reached. We are certain that Congress did not intend to deprive the parties to this dispute of their right to appeal and to relegate them to relief under Fed.R.Civ.P. 60 when it authorized appellate removal by enacting the FDIC removal statute. Thus, the role of the district court must be simply to treat the removed proceeding as if it had originated in the district court and adopt the state court judgment as its own. See Yancey Camp.
 
 
 27
 Since the instant appeal only deals with the district court's decision to remand, we do not reach the merits of the case. One further procedural point, however, must be addressed. When this appeal was first filed, a motion panel of this court decided not to enjoin the ongoing state appeal. Its decision is not the law of the case. See Northshore Development, Inc. v. Lee, 835 F.2d 580, 583 (5th Cir.1988) and Browning v. Navarro, 887 F.2d 553, 557 (5th Cir.1989), reh'g denied, 894 F.2d 99 (5th Cir.1990). An injunction is proper because once a case is removed, the state court no longer has jurisdiction over the dispute. The anti-injunction act, moreover, does not bar our injunction. Federal courts are generally barred from enjoining state court proceedings so as to preserve our system of concurrent jurisdiction. See Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 286, 90 S.Ct. 1739, 1743, 26 L.Ed.2d 234 (1970). However, once a case is removed, the state court no longer enjoys concurrent jurisdiction over the dispute. The anti-injunction act, therefore, does not bar an injunction of a state court proceeding which purports to exercise jurisdiction over a removed case. See French v. Hay, 89 U.S. (22 Wall) 250, 253, 22 L.Ed. 857 (1875).[8]
 
 
 28
 (2) Sanctions.
 
 
 29
 Since we reverse the district court's decision to remand the instant appeal, it is clear that its award of sanctions for improper removal must also be reversed.
 
 Conclusions
 
 30
 The decision of the district court remanding this matter and assessing sanctions is REVERSED and REMANDED. Further state court proceedings are hereby ENJOINED.
 
 
 31
 PATRICK E. HIGGINBOTHAM, Circuit Judge, concurring in part and dissenting in part:
 
 
 32
 I concur in the reversal of the sanctions order, but I dissent from the remainder of my colleagues' thoughtful opinion. The case is difficult and perplexing, but I am persuaded of a different course. 12 U.S.C. Sec. 1819(b)(2)(B) does not permit the FDIC to remove all cases pending on appeal in the state courts. The statute limits the right of removal to cases over which the district court may exercise some original jurisdiction. It does not forbid all removals from state appellate courts. It permits them when Rule 60 relief is available and sought. But that is not this case.
 
 
 33
 I find the majority's reading of the statute to be implausible, not required by precedent, and to rest upon judicial creation of new procedural tracks for removal without Congressional warrant. The majority leaves us with unacceptable alternatives: we must either permit the federal district courts to exercise appellate jurisdiction over state trial judgments, or require them to enter judgments that do not reflect their own judgment at all. The majority chooses the latter path, imposing a clerk's role on Article III courts; but neither alternative is consistent with the statute or the rest of the federal jurisdictional legislation.
 
 I.
 
 34
 12 U.S.C. Sec. 1819(b)(2)(A) provides that, subject to exceptions not applicable here, all civil suits to which the FDIC is a party are deemed to arise under the laws of the United States. 12 U.S.C. Sec. 1819(b)(2)(B) provides that the FDIC may remove any such action, suit, or proceeding from "a State court to the appropriate United States district court." These subsections expand the original and removal jurisdiction of the district courts, as they permit the FDIC to bring actions which, because of their subject matter, would ordinarily have been matters for the state courts. Carrollton-Farmers Branch Independent School District v. Johnson & Cravens, 13911, Inc., 889 F.2d 571 (5th Cir.1989); Triland Holdings & Co. v. Sunbelt Service Corp., 884 F.2d 205 (5th Cir.1989).
 
 
 35
 To permit the FDIC to remove this case, however, my brothers read the statute to do far more than add a new class of cases to the district courts' federal question jurisdiction. They read it to permit the FDIC to remove cases to the district courts regardless of their procedural posture (so long as they are still pending somewhere in the state system). Ultimately, their reading is necessarily premised on an assumption that the general federal question removal statutes, 28 U.S.C. Secs. 1441-1451, permit this as well. I do not think these statutes can bear that freight.
 
 A.
 
 36
 The majority opinion suggests that Sec. 1819(b)(2) creates in the FDIC a right of removal independent of the general removal statutes. As I noted, this is true to a point--the FDIC may remove any case to which it is a party, and is not constrained by the subject matter limits that bind other parties. But to conclude, without reference to the general removal statutes, that Sec. 1819(b)(2) permits removal of any pending case regardless of procedural posture, we must find in FIRREA an independent procedural track for removed cases. I can find none, and must assume that Congress intended to rely on the procedural track established in the general removal statutes. For example, Sec. 1819(b)(2)(B) provides that removal must be to the "appropriate" district court. As "appropriate" is not defined for these purposes in FIRREA, or anywhere else in the United States Code, it necessarily refers to the venue provision in 28 U.S.C. Sec. 1441(a). That is, removal must be to the district court for the district and division in which the action is pending. Further, FIRREA simply makes no provision for much of the mechanics of removal. If the general removal statutes are not the guide, how is the FDIC to let the district court know it wishes to remove the case? How is the other party to oppose the removal? What happens to the proceedings in state court upon removal? What if the district court determines removal is not proper? It strains credulity to say that we are not to look to the general removal statutes for the answers.
 
 
 37
 When Congress wished to depart from the ordinary procedural track in FIRREA, it said so explicitly. That we are deciding this case at all proves the point, for ordinarily we do not hear appeals of remand orders--we are hearing this one because 12 U.S.C. Sec. 1819(b)(2)(C) compels us to do so. But these express departures are few and far between, and do not in any sense constitute an entire procedural track. My brothers apparently do not dispute this, for their holding ultimately relies substantially upon cases involving removal under the general statutes.
 
 B.
 
 38
 The argument that parties may remove all cases on appeal in the state court system relies upon the language of Sec. 1819(b)(2), the general removal statutes, and decisions which purportedly have read that language to permit such removal. Specifically, the argument urges that Sec. 1441(a)'s language permitting the removal of "any such action, suit, or proceeding from a state court" means exactly what it says. Section 1819(b)(2)(B) likewise provides for removal of any action "from a State Court." The argument continues that the cases clearly establish that any action may be removed until the state appellate process has been exhausted.
 
 
 39
 I agree that we should give a plain meaning to the statutory language to provide for the removal of "any" action, suit, or proceeding "from a State Court." Congress swept broadly in describing the types of removable actions--"any" means just that. But, despite the breadth of the description of the categories of removable cases, the statute is silent as to their procedural posture. We could read these statutes to authorize removal regardless of procedural posture, which would include even cases under submission to a state's highest court. That is the position the majority takes. It has also been argued that we should not go that far. This approach, understandably recoiling at the prospect of removal an instant before complete appellate exhaustion, asserts that at some point in the state appellate process, an action ceases to be removable--perhaps after an intermediate appellate decision. I do not find the principle that supports this limit, once one subscribes to the idea that the statute's broad language is more than a broad description of the category of removable cases. If the statute's broad language is not read as an effort to sweep broadly only in describing the type of removable litigation, but is rather read as describing all cases regardless of procedural posture, there is no point in the appellate process where removal will defy the statute.
 
 
 40
 These difficulties in themselves would lead me to have serious questions about the majority's reading of the statutes. But in any event I am persuaded that the statutes' plain language imposes the limit I have suggested. I have said that I believe that "any" refers solely to the type of cases that are removable, not to their procedural posture. The language of Sec. 1441(a) confirms my belief. While the statutes provide for the removal of any action, suit, or proceeding from a state court, Sec. 1441(a) states that to be removable, the case must be one over which the district court has original jurisdiction. This limit of course functions primarily to restrict the types of cases that may be removed, but it also serves to ensure that the district court will exercise original jurisdiction, and no other kind, over them.
 
 
 41
 Whatever jurisdiction the district court exercises over cases removed from state appellate courts, it cannot be original, if the time for relief from trial judgment has run. If the district court were to undertake a full examination of the merits, it would in effect exercise appellate jurisdiction over the state trial court's judgment. That this contravenes the removal statutes and works a radical change in the federal jurisdictional legislation is plain. See Barrow v. Hunton, 99 U.S. 80, 25 L.Ed. 407 (1879). See also District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); Atlantic Coast Line R. Co. v. Locomotive Engineers, 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970); Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). Perhaps for this reason, my brothers opt for the other approach, and require the district courts to rubber-stamp the trial judgments in these cases, so that they may be brought to the federal appeals courts for review.
 
 
 42
 There are no fewer problems with this approach. It simply vests federal appellate jurisdiction over the state court's judgment in the circuit courts, rather than the district courts. And while it prevents the district courts from exercising appellate jurisdiction over the state trial judgments, it does not permit them to exercise original jurisdiction. It would take an overly strained reading of the term to conclude that the majority's rubber stamp process constitutes the exercise of original jurisdiction. Finally, this approach has the added disadvantage of imposing a judicially crafted exception to the procedural track Congress established for removal. I find it difficult to believe that when Congress provided for state cases to be removed to district courts, it intended that the district courts would be required to enter the state court judgment as its own. Congress can define jurisdiction, but it cannot dictate the outcome of an exercise of Article III power. United States v. Klein, 13 Wall. 128, 20 L.Ed. 519 (1871); Glidden Co. v. Zdanok, 370 U.S. 530, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1962). Further, I think it plain that if Congress intended that removed cases flow directly to the United States Courts of Appeals, it would have said so.
 
 
 43
 Nonetheless, if our cases permitted removal in these circumstances, we would be bound to permit it here, for we cannot overrule prior panels. But unlike my brothers, I do not read our cases so broadly.
 
 
 44
 It is of course plain that no case may be removed once the state appellate process has been exhausted. See Four Keys Leasing and Maintenance Corp. v. Simithis, 849 F.2d 770 (2d Cir.1988); Ristuccia v. Adams, 406 F.2d 1257 (9th Cir.), appeal dismissed and cert. denied, 396 U.S. 1, 90 S.Ct. 24, 24 L.Ed.2d 3 (1969); Mestice v. McShea, 201 F.2d 363 (3d Cir.1953). It is equally beyond dispute that any case may be removed prior to trial judgment, provided the other criteria for removal are met. But, as I will demonstrate, things are not as clear in the gray area between trial judgment and appellate exhaustion. Principled line-drawing thus becomes necessary, and must be undertaken with strict attention to the removal scheme Congress has carefully crafted.
 
 
 45
 We have faced the issue of post-trial-judgment removal only a few times. In Murray v. Ford Motor Co., 770 F.2d 461 (5th Cir.1985), the plaintiff brought a products liability action against Ford in a Texas court. The Texas court set Ford's appearance date for a Tuesday, but Ford removed on the previous Friday. The Texas court did not receive notice of the removal, so when Ford failed to appear on Tuesday, the court entered a default judgment for the plaintiff. Ford convinced the district court to set the judgment aside under Rule 60(b)(6). We held this relief was inappropriate, but affirmed because Rule 60(b)(1) relief was still available.
 
 
 46
 FDIC v. Yancey Camp Development Co., 889 F.2d 647 (5th Cir.1989) presented circumstances more similar to those we now face. YCD filed an application in Texas court for a writ of garnishment against Highland Park National Bank, in an effort to collect a judgment against an entity YCD incorrectly believed had deposits at the bank. Internal problems prevented the bank from filing a timely answer, and the Texas court entered a default judgment for YCD. The bank appealed to the Texas Court of Civil Appeals, but went insolvent while the case was pending. The FDIC intervened and removed to the district court, seeking Rule 60(b) relief. We held the district court improperly refused to grant the relief. We did not discuss the removal question further than to say "[a] state court judgment in a case properly removed to federal court--like the one before us--can be vacated under Federal Rule of Civil Procedure 60(b)." 889 F.2d at 648.
 
 
 47
 In Beighley v. FDIC, 868 F.2d 776 (5th Cir.1989), the FDIC did not receive notice of the plaintiff's suit against the failed bank until after the state court had entered a default judgment in the plaintiff's favor. The FDIC filed motions in the state court to vacate and for new trial, but removed before the state court could rule on them. We held the removal proper.
 
 
 48
 We also held removal proper in Northshore Development Inc. v. Lee, 835 F.2d 580 (5th Cir.1988). There, the savings and loan had a judgment in its favor reversed by an intermediate Louisiana appellate court; that court further held the opposing party was entitled to damages against the savings and loan for wrongful issuance of a temporary restraining order and injunctions. The appellate court remanded the case to the trial court to fix damages. After the trial court made its award, the FSLIC intervened and removed the case to the district court seeking relief from judgment under Rule 60(b).
 
 
 49
 We have also permitted a district court on removal to set aside a default judgment against a Jones Act defendant. Azzopardi v. Ocean Drilling & Exploration Co., 742 F.2d 890 (5th Cir.1984). The Ninth Circuit has permitted a district court on removal to set aside a default judgment against a diverse defendant on a state law claim. Butner v. Neustadter, 324 F.2d 783 (9th Cir.1963). In Munsey v. Testworth Laboratories, Inc., 227 F.2d 902 (6th Cir.1955), the Sixth Circuit did likewise.
 
 
 50
 A search for an explicit unifying principle in these cases is in vain. Their language equally supports two implicit possibilities--that cases may be removed any time prior to final appellate judgment, or that cases may be removed only as long as the district court may exercise some form of original jurisdiction over the case, even if only of the limited Rule 60 variety. My reading of the removal statutes leads me to opt for the latter. Our holding in Yancey Camp does not compel otherwise. The case there was removed from a state appellate court, but the FDIC sought Rule 60 relief, the exercise of original jurisdiction. This is consistent with our ordinary procedure. When a party in a case before us seeks Rule 60 relief, we remand to the district court for that determination before considering the appeal.
 
 II.
 
 51
 The Eleventh Circuit, the only other circuit to have considered the problem, has taken the majority's position. The Eleventh Circuit held the FSLIC could remove a case after trial judgment, but before the time for appeal has lapsed. The court approached the case the same way the majority does, and added that if Congress had intended to otherwise limit the right of removal to a particular point in the proceedings, it could have said so explicitly. Indeed, Congress did just that in 12 U.S.C. Sec. 632 (1982), limiting the power of a Federal Reserve member bank to remove a suit to "any time before the trial thereof." In re Savers Federal Savings and Loan, 872 F.2d 963, 964 (11th Cir.1989). I am not persuaded that the failure to place similar language in FIRREA compels the majority's reading. No such language is in the general removal statutes either; the limit comes from the emphasis on original jurisdiction. Finally, the Eleventh Circuit did not address the difficulties of its holding, particularly the absence of fresh procedural tracks in FIRREA.
 
 
 
 [1]
 Although the FIRREA was enacted after the current proceeding was initiated, it is clear that the FDIC may utilize it. See Turboff v. Merrill Lynch, Pierce, Fenner, & Smith, 867 F.2d 1518, 1521 (5th Cir.1989) (Jones, J.) ("When Congress adopts statutory changes while a suit is pending, the effect of which is not to eliminate a substantive right but rather to change the tribunal which will hear the case, those changes--barring specifically expressed intent to the contrary--which have immediate effect.") (citations omitted); and In re Resolution Trust Co., 888 F.2d 57, 58 (8th Cir.1989)
 
 
 [2]
 We do not decide whether this type of removal would be proper under 28 U.S.C. Sec. 1441. First, it is clear that the FDIC could not remove the instant case under Sec. 1441. The dispute hinges on state law and thus, there is no federal question jurisdiction. Second, it is unclear whether the FDIC may utilize Sec. 1441 to effectuate removal in any case, not just the present one. In FDIC v. Sumner Financial Corp., 602 F.2d 670 (5th Cir.1979) we held that the predecessor statute to 12 U.S.C. Sec. 1819(b)(2) was a complete jurisdictional scheme and that both original and removal jurisdiction over the FDIC was proper only if the case fell within the ambit of Sec. 1819. Id. at 677-80. See also FDIC v. Elefant, 790 F.2d 661 (7th Cir.1986). It is not entirely clear, however, that Sumner is still good law. In FSLIC v. Ticktin, 490 U.S. 82, 109 S.Ct. 1626, 104 L.Ed.2d 73 (1989) the Supreme Court held that the statute granting jurisdiction over the FSLIC, 12 U.S.C. 1730(k)(1), was not exclusive and did not preclude the exercise of jurisdiction under other grants of jurisdiction. The FSLIC jurisdictional statute was very similar to the statutory predecessor to the FDIC jurisdictional statute and Ticktin, therefore, calls into question the result we reached in Sumner
 
 
 [3]
 Congress enacted at least one statute authorizing post-judgment removal during the Reconstruction era. See the Habeas Corpus Act of 1863, ch. 81, Sec. 5, 12 Stat. 755, 757 ("And it shall be lawful in any such action or prosecution ... after final judgment, for either party to remove and transfer, by appeal, such case.")
 
 
 [4]
 Act of March 3, 1875, ch. 137, Sec. 2, 18 Stat. 470
 
 
 [5]
 Although Congress generally forbids the lower federal courts from entertaining appeals from state courts--see, e.g., District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476, 482, 103 S.Ct. 1303, 1311, 1314, 75 L.Ed.2d 206 (1983) and Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16, 44 S.Ct. 149, 68 L.Ed. 362 (1923), there is no constitutional prohibition against it doing so. See The Federalist No. 82, at 494-95. (A. Hamilton) (Rossiter ed. 1961) ("I perceive ... no impediment to the establishment of an appeal from the State courts to the subordinate national tribunals....")
 
 
 [6]
 See Beighley v. FDIC, 868 F.2d 776, 781 (5th Cir.1989) (suggesting that Barrow's reach has been curtailed by modern case law)
 
 
 [7]
 See also Azzopardi v. Ocean Drilling & Exploration Co., 742 F.2d 890 (5th Cir.1984) and Butner v. Neustadter, 324 F.2d 783, 785 (9th Cir.1963)
 
 
 [8]
 28 U.S.C. Sec. 1446(d) recognizes this fact by stating that after removal, the "State court shall proceed no further unless and until the case is remanded." 28 U.S.C. Sec. 1446(d), therefore, provides support for our decision to enjoin the state court appellate proceeding. We do not rely on this statute, however, because it is not clear whether Sec. 1446 may be utilized when removal is premised on 12 U.S.C. Sec. 1819(b)(2). The predecessor to the current statute stated that the FDIC could "remove any such action ... by following any procedure for removal now or hereafter in effect." The Financial Institutions Supervisory Act of 1966, Pub.L. No. 89-695, Sec. 205, 80 Stat. 1028, 1055. In In re Savers Federal Savings & Loan Assoc., 872 F.2d 963, 965 (11th Cir.1989), for example, the court held that the procedural strictures of Sec. 1446 governed removal under 12 U.S.C. Sec. 1730(k)(1) (repealed by FIRREA, Pub.L. 101-73, Title IV, Sec. 407, 103 Stat. 363 (1989)) which employed language similar to the now repealed FDIC removal statute. The current FDIC removal statute says nothing about the procedure which is to be followed on removal and it is possible, therefore, that Sec. 1446 no longer governs FDIC removal. See Resolution Trust Corp. for Sandia Federal Sav. Assn. v. Key, 733 F.Supp. 1086, 1089 (N.D.Tex.1990) (holding that 28 U.S.C. Sec. 1446 does not govern removal by the Resolution Trust Corporation). Since we do not rely directly on Sec. 1446, we need not to decide this issue