Walter E. **RYAN**, and Bernard McKay, Taxpayers for Themselves and all Others Similarly Situated, in the Name of and for the Benefit of the State of Illinois, Plaintiffs,

v.

Jerome **COSENTINO**, Treasurer, State of Illinois, and Cosmopolitan National Bank of Chicago, Fast Motor Service Inc., James E. Wells, Gerald J. DeNicholas and Alex M. Vercillo, Brown Leasing Company (formerly known as Capitol Leasing Co.) and Terry N. Brown, Defendants.

No. 91 C 3725.

United States District Court, N.D. Illinois, E.D.

Oct. 4, 1991.

Clinton A. Krislov and Daniel J. Fumagalli, Fumagalli & Tecson, Ltd., Chicago, Ill., for plaintiffs.

William A. Spence and John E. Farrell, Freeborn & Peters, Chicago, Ill., for FDIC.

Jeffrey Schulman and Nancy L. Hirsch, Wolin & Rosen, Ltd., Chicago, Ill., for Alex M. Vercillo.

Robert P. Cummins and Kass A. Plain, Bickel & Brewer, Chicago, Ill., for Gerald J. DeNicholas.

Michael J. Hayes and Bart Murphy, Gardner Carton & Douglas, Chicago, Ill., for Jerome Cosentino.

Robert Haney and Scott Tuckman, Kwiatt & Silverman, Ltd., Chicago, Ill., for Brown Leasing Co. and Terry N. Brown.

Roger P. Flahaven, Asst. Atty. Gen., Chicago, Ill., for Treasurer Quinn.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

This taxpayer action suit was brought in state court on August 16, 1990 against then state treasurer Cosentino and the Cosmopolitan National Bank of Chicago to recover interest the state allegedly lost when Cosentino deposited excessive state funds in non-interest-bearing accounts in return for loans to Cosentino's financially-troubled company. On January 11, 1991, Brown Leasing Company (formerly known as Capitol Leasing Co.) and its president Terry N. Brown filed a complaint against Cosmopolitan alleging that they had been induced by the bank's misrepresentations to make loans to Cosentino. Upon learning of their role in the scheme, the plaintiff taxpayers added Brown Leasing and Terry Brown to the list of defendants in the present suit. The case was removed to this court on June 14, 1991. The plaintiffs seek to recover, in

addition to lost interest, profits and other benefits allegedly earned by Cosentino and his affiliates. Brown Leasing and Terry Brown, in addition to Patrick Quinn, current treasurer of the state of Illinois, have filed motions to dismiss.

*Quinn's Motion to Dismiss*

■ Looking first to the motion brought by state treasurer Quinn, the parties dispute whether or not the Eleventh Amendment bars the claims against him. Count II of the second amended complaint seeks "a writ of mandamus against the State Treasurer compelling him to demand interest payments from Cosmopolitan and compelling him to disqualify Cosmopolitan as a state depository." The plaintiffs allege that the state treasurer was required to take these actions under the State Moneys Act, Ill.Rev.Stat.(1989) ch. 130, par. 20 *et seq.*

Contrary to the plaintiffs assertions, Count II, in as much as it seeks action by the state treasurer in his official capacity, is clearly brought against the state. Although the Eleventh Amendment by its own terms does not bar suits against a state by its own citizens, the Supreme Court has consistently interpreted the provision to preclude such suits brought in federal court against an unconsenting state. *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974); *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). The plaintiffs argue, however, that the principle allowing plaintiffs to seek prospective relief against individual state defendants named in their official capacities is applicable here. That principle, first enunciated in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), allows a federal court to "enjoin state officials to conform their future conduct to *the requirements of federal law,* even though such an injunction may have an ancillary effect on the state treasury." *Quern v. Jordan,* 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979) (emphasis added), citing *Jordan,* 415 U.S. at 667–668, 94 S.Ct. at 1357–1358. In *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), the Supreme Court explicitly held that the principle granting prospective relief enunciated in *Young* is inapplicable in a suit brought against state officials on the basis of state law. *Id.,* at 106, 104 S.Ct. at 911. The Court went on to declare that this Eleventh Amendment bar cannot be overridden by principles of pendent jurisdiction. *Id.,* at 121, 104 S.Ct. at 919.

The plaintiffs answer Quinn's *Pennhurst* argument by contending that because the entire action arises under the Financial Institutions, Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), the suit is deemed to arise, in its entirety, under the laws of the United States. According to plaintiffs, FIRREA provides blanket authority to "federalize" and remove all pending litigation involving seized institutions. Federal jurisdiction is provided for in 12 U.S.C. § 1819(b)(2):

(A) In general

Except as provided in subparagraph (D), all suits of a civil nature at common law or in equity to which the Corporation, in any capacity, is a party shall be deemed to arise under the laws of the United States.

While the language of the statute allows for removal of actions involving strictly state law issues, see, *e.g., In re Meyerland Co.,* 910 F.2d 1257 (5th Cir.1990), all of the actions brought to the Court's attention, and, indeed, all of the cases discovered during independent research, lack the jurisdictional challenge to pendent party claims asserted in this suit. See, *e.g., Lazuka v. Federal Deposit Ins. Corp.,* 931 F.2d 1530 (11th Cir.1991); *Meyerland,* 910 F.2d 1257; *Pernie Bailey Drilling Co. v. Federal Deposit Ins. Corp.,* 905 F.2d 78 (5th Cir.1990); *Federal Deposit Ins. Corp. v. Nichols,* 885 F.2d 633 (9th Cir.1989); *Yankee Bank for Finance and Savings, FSB v. Hanover Square Assoc.–One Ltd. Partnership,* 693 F.Supp. 1400 (N.D.N.Y.1988). Indeed, while several of these cases involved pendent parties, each of the pendent party claims required the resolution of a dispute with the bank for which the FDIC had been appointed receiver. In this case, on the

other hand, the claim against defendant Quinn requires only affirmative action on his part; thus, the FDIC through Cosmopolitan is, at most, tangentially implicated in Count II.

*Federal Deposit Ins. Corp. v. Israel*, 739 F.Supp. 1411 (C.D.Cal.1990) is the only case the Court has come across in which the propriety of ancillary (now "supplemental") jurisdiction was discussed. In *Israel*, the cross-claims and counter-claims filed in the case implicated pendent parties. In deciding whether jurisdiction over these pendent party claims was proper, the court stated:

> To read the language of 12 U.S.C. section 1819 broadly would be inconsistent with the interpretation of ... other jurisdictional statutes and would eviscerate the rules that have grown up around them. The words "civil actions" or "civil suits" have been read to mean specific claims and not just the general theme of the suit.
>
> Thus, 12 U.S.C. section 1819(b)(2) must be read as an explicit grant of jurisdiction only over claims to which the FDIC is a party. This interpretation keeps the FDIC in federal court, subject to the *proviso*, but limits the right of otherwise statebound litigants to haul their disputes into federal court on the coattails of an FDIC intervention. It accords with the canon that a Congressional grant of jurisdiction should be read narrowly, *Healy v. Ratta*, 292 U.S. 263, 54 S.Ct. 700, 78 L.Ed. 1248 (1934), and that "a grant of jurisdiction over claims involving particular parties does not itself confer jurisdiction over additional claims by or against different parties." *Finley*, 109 S.Ct. at 2010.

The Court in *Israel* went on to find that it lacked subject matter jurisdiction over the pendent party claims. This logic is persuasive. FIRREA was intended to ensure that claims involving the FDIC could always be heard in a federal forum. Congress could not have intended that every conceivable supplemental claim would be "federalized" by virtue of an often tenuous connection to the claim involving the FDIC. The present case is a case in point: Count II, which contains the only claim against Quinn, is a claim for injunctive relief against a state actor under state law; the FDIC is not a party to Count II. This Court holds that Count II is not "federalized" by the pendent FIRREA claims, but presents an issue of state law.

If FIRREA does not federalize pendent party claims, the plaintiffs seek to invoke the principles of pendent party jurisdiction to obtain a federal forum for the Count II claims. The rules governing pendent party jurisdiction, which had become increasingly restrictive almost to the point of precluding its use altogether, have been recently altered. If parties seek to invoke pendent party jurisdiction, they need merely demonstrate that the pendent party claim forms part of the "same case or controversy under Article III" as the federal claim. This test was set forth in the Judicial Improvements Act of 1990, 28 U.S.C. § 1367(a), effective December 1, 1990, which overruled *Finley v. United States*, 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989). The plaintiffs' claim against state treasurer Quinn clearly arises out of the same controversy as the federal claims—were it not for the alleged involvement of Cosmopolitan in the schemes set forth in the complaint, the State Moneys Act would not require action on the part of the state treasurer. Therefore, pursuant to 28 U.S.C. § 1367(a), the Court's exercise of supplemental jurisdiction is mandatory.

This conclusion brings the Court back to the question of the Eleventh Amendment. If the Court has supplemental jurisdiction over the claim against state defendant Quinn, and if the claim seeks prospective relief under state law, does the Eleventh Amendment bar the claim? The answer is clearly "yes," unless the relevant federal law has explicitly abrogated the immunity under the Eleventh Amendment. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65, 109 S.Ct. 2304, 2308, 105 L.Ed.2d 45 (1989). There is no such abrogation in FIRREA. The plaintiffs imply that because FIRREA contains language echoing that of 28 U.S.C. § 1331, the act overcomes Eleventh Amendment immunity. This argument is without merit. As the First Circuit

held in *Litton Industries, Inc. v. Colon,* 587 F.2d 70, 74 (1st Cir.1978), "adding 28 U.S.C. § 1331 to the complaint did not avoid the jurisdictional impact of the eleventh amendment." The same reasoning precludes a finding that parallel language in FIRREA voids Eleventh Amendment immunity.

■ The plaintiffs ask this court, not to dismiss Count II, but to sever and remand it to state court. Section 1447(c) requires that a motion for remand be made within thirty days after removal. Although no court has addressed this issue in the context of FIRREA, several courts have addressed the appropriate time limitation for removal of a case under FIRREA. Each court to address removal has found that the thirty-day limitations period of 28 U.S.C. § 1446(b) governs. See *Lazuka,* 931 F.2d at 1536. It stands to reason that the general remand provisions of 28 U.S.C. § 1447(c) would apply as well. The present case was removed to this court on June 14, 1991; more than thirty days have passed since that time. This Court cannot, therefore, remand Count II. Accordingly, state treasurer Quinn's motion to dismiss Count II is granted, without prejudice.

### Brown's Motion to Dismiss

■ Defendants Brown Leasing Co. and Terry N. Brown (collectively "Brown") have also submitted a motion to dismiss in support of which they raise five arguments. The first challenge raises a question of standing. Brown acknowledges the right of Illinois taxpayers to bring a suit to enjoin the misappropriation or waste of public money. He contends, however, that before such a suit may be brought, the plaintiff taxpayers must make a demand on the Attorney General, who must then refuse to prosecute the action.

As an initial matter, the Court notes that the complaint does not seek "to restrain and enjoin the disbursement of public

funds by any officer or officers of the State government." Ill.Rev.Stat. ch. 110, par. 11–301. This suit is brought to recover past disbursements of public funds, which is provided for in Ill.Rev.Stat. ch. 110, par. 20–101, et seq.[1] To bring a suit to recover public funds under 20–103, a private citizen must send a letter to the Attorney General stating his intent to file a suit for recovery. If, within sixty days of the date of delivery of the demand letter, the Attorney General has not instituted an action for recovery, sent notice that a settlement has been arranged, or stated his intention to commence suit within sixty days, the citizen suit may proceed. Ill.Rev.Stat. ch. 110, par. 20–104. While the Court has found no cases interpreting the relevant statutory language, it is clear that the letter entitled "Demand For Action To Recover Interest," dated June 21, 1990, from plaintiffs' counsel to then Attorney General Neil Hartigan, satisfied the demand requirements. On July 2, 1990, the office of the Attorney General sent a response to plaintiffs' counsel indicating that more research needed to be done on the issues raised in the demand letter, but that action by the Attorney General was not foreclosed. Fourteen months have passed since that letter was sent, and there is no indication that the Attorney General wishes to take action. In any event, the requirements of 20–104 have been satisfied, and this suit may go forward as a private action.

■ The remainder of Brown's challenges attempt to elicit the basis of the claims against him, as set forth in Count V. While the plaintiffs have demonstrated their ability to bring suit as private citizens, 20–104 does not set out a substantive violation. It is the failure to clearly articulate the substantive violation that is the basis for Brown's remaining arguments. The plaintiffs have carefully and clearly stated the alleged scheme encompassing all of the defendants. The violations of feder-

---

1. Paragraph 20–103 provides:

   Any person who by means of a false record, statement or representation, or by willful concealment of any material fact, or by other fraudulent scheme or device on behalf of himself, his dependents or others, knowingly obtains from the State or local governmental unit compensa-

   tion, benefits or remuneration to which he is not entitled, or in a greater amount than that to which he is entitled, shall be liable for full repayment of such compensation, benefits or remuneration to which the person was not entitled.

al law are less clearly stated. This Court, like Brown, is unable to determine from the face of the complaint, or from the briefs submitted in support of the motion to dismiss, the role that certain federal statutes play in the allegations. At one point the plaintiffs claim that the defendants are involved in a fraudulent tying arrangement under 12 U.S.C. § 1972. When challenged on having insufficiently pled their fraud claim, however, the plaintiffs claim that bank fraud, one of the predicate acts under RICO does not have the same pleading requirements as common law fraud. In essence, the plaintiffs shift the basis of liability to meet the challenges of the defendants. Accordingly, the Court grants Brown's motion to dismiss Count V of the complaint, without prejudice.

### CONCLUSION

In accordance with the Court's analysis, state treasurer Quinn's motion to dismiss Count II is granted, without prejudice. The motion to dismiss Count V brought by Terry N. Brown and Brown Leasing is also granted, without prejudice. The Court grants the plaintiffs leave to file an amended Count V within 21 days to clarify their claim.